**PEACOCK RECORDS, INC., a Texas corporation, and Don D. Robey, a citizen of Texas, Plaintiffs-Appellees,**

**v.**

**CHECKER RECORDS, INC., an Illinois corporation, Chess Record Corp., an Illinois corporation, and Phil Chess and Leonard Chess, Defendants-Appellants.**

**Nos. 14944, 15382.**

United States Court of Appeals
Seventh Circuit.

July 26, 1966.

A. Bradley Eben, John H. Burton, Eli Mullin, Chicago, Ill., for appellants.

William R. Ming, Jr., Ellis E. Reid, Chicago, Ill., for appellees.

Before SCHNACKENBERG, CASTLE and KILEY, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

In a diversity action in the district court, Checker Records, Inc., and Chess Record Corp., Illinois corporations, Phil Chess and Leonard Chess, defendants, appeal from a judgment against them in No. 14944 in favor of Peacock Records, Inc., a Texas corporation, and Don D. Robey, a citizen of Texas, plaintiffs, for $250,000 (later reduced to $150,000). The case was tried without a jury.[1]

Plaintiffs' complaint, which defendants answered, contained five counts. Count I alleged violation by defendants of plaintiffs' contractual relations with the Blind Boys, a group of singers; count II relied on a supposed violation by defendants of plaintiffs' contractual relations with Reverend Ballinger; count III charged conspiracy by defendants to interfere with Peacock's contracts described in counts I and II; count IV prayed for injunctions against interference with its contracts by defendants; by count V, plaintiff Robey sought damages from defendants for their alleged fraudulent interference with Robey's contractual relations with composers Loyd Woodard and Rosco Robinson.

It has been the contention of plaintiffs that the Blind Boys occupied a pre-eminent position as singers of gospel music and that plaintiffs made substantial advances on royalties to them and spent substantial sums in promotion of sales of their records. Plaintiffs have also contended that there is uncontradicted evidence that defendants tried to buy the rights of plaintiffs to record these and other artists.

There was evidence as to sales by and profits accruing to plaintiffs on sales of records of the Blind Boys, under count I, including the opinion of a business specialist in the gospel music field that the exclusive right to record these singers for a year was worth $20,000 to $25,000.

There was evidence as to the quantum of sales of records made by Reverend Ballinger for plaintiffs under count II and the admission by defendants of royalties on music written by Robinson and Woodard,[2] which were collected by defendants, under count V.

On January 17, 1964, the court entered a judgment in favor of plaintiffs for $250,000 which was reduced on September 21, 1964, as above indicated to $150,000. Appeal No. 14944 has brought this judgment as amended to this court.

On June 22, 1965 defendants appeared by counsel and moved to vacate the judgment of September 21, 1964, pursuant to rule 60(b) of the Federal Rules of Civil Procedure, on the ground, *inter alia*, that it was obtained by fraudulent practices on the part of plaintiffs, by means of which they procured and suborned perjured testimony at the trial material to the issues and controlling in the result thereof, which motion was accompanied by supporting affidavits of Leonard Chess, a defendant, and Loyd Woodard, J. T. Clinkscales and Lawrence Abram. On July 9, 1965, plaintiffs filed an answer.

On August 10, 1965, a hearing on the motion under rule 60(b) was begun. Called as witnesses by defendants, on August 17, 1965, were three of the Blind Boys and, by the court, the wife of one of them. The court appointed counsel to advise these witnesses of their rights to refuse to testify and the consequences in case they chose to testify. Thereafter they appeared with court-appointed counsel and stated that they were ready to testify. But the court did not take any further testimony of these witnesses. Instead it stated:

" * * * the more I go into it, the more serious it becomes as to whether

---

1. Tried first was an amended counterclaim which charged in two counts that plaintiffs interfered with defendants' rights to record a certain group of vocalists, and a conspiracy to manufacture false evidence for the purpose of maliciously prosecuting defendants, including bringing this suit. The court found against defendants on both counts.

2. They were two of the Blind Boys.

or not I should consider this petition[3] at all.

\* \* \* \* \* \*

" \* \* \* Now, mysteriously two of the other witnesses just voluntarily come in and want to tell the truth to clear their conscience. It just sounds thin to me, gentlemen. I am going to refuse to consider this petition. I will indicate to the Court of Appeals, first, that I do not think I have jurisdiction; second, if I do have jurisdiction, that I do not think it is the kind of petition, based upon the kind of evidence that the Court should reopen a judgment after these many long months, because I think what Mr. Ming has said and having in mind particularly my memory of the testimony of some of the things that the plaintiffs themselves swore to under oath—not the plaintiffs, but rather the defendants Chess swore to in this court, the payment of money that they themselves admitted was made in this hearing—I am just not of the opinion that this case should be reopened and I will advise the Court of Appeals that in my judgment it should not be opened; that it will furnish just exactly the opportunity that Mr. Ming has pointed out for endless litigation of this type of case.

"These Five Blind Boys have my deepest sympathy. They are the pawns and they are in the middle of this fight.

"As I indicated to you, gentlemen, I am going to continue to ask that this be further investigated to see what has happened in this case. It is very serious. I will indicate to the Court of Appeals that I will not—I had thought I should grant a hearing, but on further consideration, I think it is not a matter that I should grant hearing in at all. I think the time to dispose of it is here and now. Let the Court of Appeals pass upon this judgment. I will enter a formal order in accordance therewith."

On August 19, 1965 the court entered the order (from which defendants appeal in No. 15382) in which the court set forth as a reason for its finding:

"3. It is inherently incredible that these affiants, three of whom are blind, voluntarily offered to admit that they committed perjury on the trial of this cause, \* \* \*."

and advised us that it would not grant the "petition" under rule 60(b) if the cause were remanded.

The effect of this order, if permitted to stand, is to avoid a specific, direct judicial inquiry and determination as to the truth of the sworn statements, to which the court refers.

█ Inferentially the district court concedes that the testimony of these persons at the trial was part of the evidence upon which the judgment under attack was based. We hold that where it appears that perjured testimony may have played some part in influencing the court to render a judgment, the perjury will not be *weighed,* on a motion to set aside the judgment. This seems self-evident. The factual question which the district court failed to answer is, "Was the judgment obtained in part by the use of perjury?" Atchison T. & S. F. Ry. Co. v. Barrett, 9 Cir., 246 F.2d 846, 849 (1957). If it was, then it was clearly the duty of the district court to set aside the judgment, because poison had permeated the fountain of justice. Thus, in that event, this taint had affected the entire proceeding in the court below, although we find no indication that any counsel herein was a party to any wrongdoing.

Perhaps nothing could be more helpful in emphasizing the correctness of the result we now reach than a reference to Parker v. Checker Taxi Company, 7 Cir., 238 F.2d 241 (1956), now relied on by plaintiffs, where we expressly, at 243, recognized that

"The inherent right of the court to vacate a judgment for fraud, as stated

3. Motion under 60(b).

above, is strengthened by Rule 60(b), Federal Rules of Civil Procedure, 28 U.S.C.A., which provides that on motion the court may relieve a party from a final judgment or order for fraud, misrepresentation, or other misconduct of an adverse party."

In *Parker*, at 244, we pointed out that

"The court had nothing before it except the record in the case and the bare petition made on behalf of Field by its attorneys and verified by one of them on information and belief. The record fails to show any additional proof offered by Field prior to or at the time of the hearing."

On the other hand, in the case at bar, the district court had before it, not only the record in the case, but the motion under rule 60(b), supported by affidavits (which occupy 110 pages of the printed appendix herein), and an indication that witnesses Woodard, Clinkscales, Abram and wife Dorothy, were willing to testify after the court had warned them of their constitutional rights and had appointed counsel for them.

█ While in *Parker* this court found nothing in the record and the "petition" to justify setting aside the judgment under rule 60(b) and held that it could not say "from the record before us here" that the district court did not exercise a sound legal discretion when it denied the "petition" under rule 60(b), in the case at bar the record affirmatively shows that the district court did have before it, in addition to the verified motion under 60(b), sworn testimony in open court, which was unimpeached and which so clearly supported the motion that it becomes incumbent upon us to hold that, in denying the motion, the court failed to exercise a sound legal discretion. This action requires that the order from which this appeal (No. 15382) was taken be reversed and that an order be entered by that court granting said motion, and, in No. 14944, vacating the judgment theretofore entered in favor of plaintiffs and against defendants and remanding said cause for a new trial.

In No. 14944 Judgment vacated and remanded; in No. 15382 Order reversed and remanded with instructions.