[No. 2032-2.    Division Two.    February 27, 1976.]

*In the Matter of the Welfare of* ANGEL LYNN GREEN, ET AL. MARGARET GREEN JACKSON, *Petitioner, v.* THE STATE OF WASHINGTON, *Respondent.*

*Michael Smith* (of *Smith & Levy*) and *Robert Taub* of *Puget Sound Legal Assistance Foundation,* for petitioner.

*Donald Herron, Prosecuting Attorney,* and *Don Meath, Deputy,* for respondent.

PEARSON, J.—Petitioner, Margaret Green Jackson, seeks review by certiorari of an order of the Pierce County Superior Court permanently depriving her of parental custody of her minor children, Angel Lynn Green and Justine Lorraine Green, upon a finding of the children's dependency, as defined in RCW 13.04.010(1), (2), (3), and (8).[1]

The petitioner seeks a new deprivation hearing on two grounds. (1) She argues that the court erred in ordering her to undergo psychiatric examinations when her mental condition was not "in controversy" and "good cause" was not advanced therefor, as required by Superior Court Civil Rule 35(a). (2) She also contends it was a violation of her Fifth Amendment rights for the court to require her to testify at the deprivation hearing. Other issues raised in the petition were not pursued in petitioner's brief or oral argument. We find no merit in petitioner's contentions, and therefore affirm the order of deprivation.

The petition for permanent deprivation was filed January 7, 1975, by juvenile detention officer Helen Zylstra, alleging that Angel, then 5 years old, and Justine, then 4, were

[1]RCW 13.04.010 provides in part as follows:

"For the purpose of this chapter the words 'dependent child' shall mean any child under the age of eighteen years:

"(1) Who has no home or any settled place of abode, or any proper guardianship, or any visible means of subsistence; or

"(2) Who has no parent, guardian or other responsible person; or who has no parent or guardian willing to exercise, or capable of exercising, proper parental control; or

"(3) Whose home by reason of neglect, cruelty or depravity of his parents or either of them, or on the part of his guardian, or on the part of the person in whose custody or care he may be, or for any other reason, is an unfit place for such child; or

". . .

"(8) Who is in danger of being brought up to lead an idle, dissolute or immoral life; or

". . .

"For the purpose of this chapter only, all children who have been adjudicated delinquent and dependent children within the state shall be considered wards of this state and their persons shall be subject to the custody, care, guardianship and control of the court as hereinafter provided."

dependent because of parental unfitness within the terms of RCW 13.04.010(1), (2), (3), and (8).

On February 19, 1975, the State filed its motion for psychiatric examination, which recited in part:

That the mother of the above named girls, Margaret Jackson, is alleged to be incapable of being an adequate mother to the girls and that a psychiatric examination of the mother is necessary for an adequate assessment of her mental and emotional capabilities.

After considering petitioner's opposing memorandum and arguments of counsel, the juvenile court ordered a psychiatric examination, which took place in the presence of Mrs. Jackson's attorney and her mother. A subsequent motion for a "follow-up" psychiatric examination was necessitated, in Helen Zylstra's words, because the psychiatrist "was unable to adequately evaluate Margaret Green Jackson in the presence of these persons." The second examination was conducted in the attorney's presence only.

At the deprivation hearing commencing June 2, 1975, Mrs. Jackson was called as an adverse witness by the State and examined concerning her past and present relationship with the girls, her version of the juvenile court workers' treatment of herself and the children, and her plans for the future. She maintained a continuing objection to being required to testify or even to be present at the hearing.

Petitioner's first assignment of error is bottomed on CR 35(a), which reads as follows:

When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is *in controversy*, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control. The order may be made only on motion *for good cause shown* and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the ex-

amination and the person or persons by whom it is to be made.[2]

(Italics ours.) The essence of Mrs. Jackson's argument is that there was no showing to the court that her mental condition was "in controversy" or that "good cause" existed for the psychiatric examination. She relies principally upon *Schlagenhauf v. Holder*, 379 U.S. 104, 13 L. Ed. 2d 152, 85 S. Ct. 234 (1964), in which the substantially similar Federal Rule of Civil Procedure 35(a) is construed.

■ When a federal court rule has been adopted as the state rule, the construction of the federal rule is pertinent. *Eberle v. Sutor*, 3 Wn. App. 387, 475 P.2d 564 (1970). Thus, the language of the United States Supreme Court is of particular interest concerning the "in controversy" and "good cause" requirements.

They are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination. Obviously, what may be good cause for one type of examination may not be so for another. The ability of the movant to obtain the desired information by other means is also relevant.

Rule 35, therefore, requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of "in controversy" and "good cause," which requirements, as the Court of Appeals in this case itself recognized, are necessarily related. 321 F2d, at 51. This does not, of course, mean that the movant must prove his case on the merits in order to meet the requirements for a mental or physical examination. Nor does it mean that an evidentiary hearing is required in all cases. This may be necessary in some cases, but in other cases the showing could be made by affidavits or other usual methods short of a

[2]For purposes of this opinion we assume, without deciding, that CR 35 necessarily applies to juvenile court deprivation proceedings.

hearing. It does mean, though, that the movant must produce sufficient information, by whatever means, so that the district judge can fulfill his function mandated by the Rule.

Of course, there are situations where the pleadings alone are sufficient to meet these requirements.

*Schlagenhauf v. Holder, supra* at 118.

■ The general principles we glean from the above quotation are that the "good cause" and "in controversy" requirements for a CR 35(a) mental or physical examination (1) are not mere formalities, but must be affirmatively satisfied by the movant; (2) will not ordinarily be—but may be—established by the pleadings alone; and (3) repose discretion in the trial judge to decide whether they have been met in a particular case.

It is true the motion for the initial examination in this case was rather conclusory; however, we do not believe the court abused its discretion in concluding that the motion stated good cause by alleging the mother was "incapable," and that an examination was necessary to assess her mental and emotional capabilities.

■ We are likewise convinced that the petition for permanent deprivation itself placed the mother's mental condition in controversy. Among other things, it alleged that the children "have no parent . . . capable of exercising proper parental control"; return to their mother would put them "in danger of being brought up to lead idle, dissolute, or immoral lives"; and the home "by reason of neglect or depravity of their mother . . . is an unfit place . . . " The very object of a deprivation proceeding, in which the welfare of the children is the paramount concern, is to determine parental fitness in *all* relevant aspects. Here the grounds advanced for deprivation placed the parent's overall fitness for custody squarely in issue. One obvious consideration of the court had to be Mrs. Jackson's mental condition. It would border on the ludicrous for us to say that the court could not inquire into the mental state of the parent because a petition alleging, *inter alia,* her "deprav-

ity" and lack of capability to exercise control did not raise a controversy as to her mental condition. The court properly exercised its discretion in ordering a psychiatric examination.[3] Once the court concluded an examination was necessary, it follows that it acted properly in ordering a second, follow-up examination under more satisfactory conditions.

Neither do we find error in the requirement that the children's mother testify at the deprivation hearing. Mrs. Jackson contends that permanent deprivation is such a "grave" and "fundamental" consequence that the hearings should be viewed as tantamount to criminal proceedings for purposes of the Fifth Amendment right of the accused to refuse to testify. The right of a criminal defendant—or any other witness—to refuse to testify is not restricted to criminal trials, but can be claimed in *any* proceeding. But the right protects disclosures that the witness reasonably anticipates could be used in a criminal prosecution or which could lead to incriminating evidence. In other words, the availability of the privilege does not turn upon the nature of the proceeding in which it is invoked, but upon the incriminating nature of the response which is sought. *In re Gault*, 387 U.S. 1, 47, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967).

Petitioner relies on *In re Luscier*, 84 Wn.2d 135, 524 P.2d 906 (1974) and *In re Myricks*, 85 Wn.2d 252, 533 P.2d 841 (1975), which hold that counsel must be appointed to assist indigent parents in deprivation proceedings because the parents' loss of a child is a loss of "liberty" protected by due process requirements. We decline the invitation to decide that the *Luscier* and *Myricks* cases require the extension of the privilege against self-incrimination to enable a parent to refuse to take the stand in a deprivation proceeding. The rationale inherent in the *Luscier* and *Myricks* decisions is that a parent should not have to face a deprivation proceeding—with all its attendant trauma and intimidation—unaided by counsel. This does

---

[3]*See Beagle v. Beagle*, 57 Wn.2d 753, 359 P.2d 808 (1961).

not support petitioner's strained application of the Fifth Amendment privilege.

The dominant consideration of the juvenile court should be the future welfare of the child, which must prevail over conflicting rights of the parent. *In re Sego*, 82 Wn.2d 736, 513 P.2d 831 (1973). Obviously, the best way for the court to fully evaluate future prospects for a viable home life is to hear the parent's own words concerning her relationship to and plans involving the child. The opinions of caseworkers and psychiatrists, while helpful, are ordinarily no substitute for the statements and demeanor of the parent, whose views and intentions are directly in issue. Clearly, to permit a refusal to testify would be to withhold from the court its chief means of determining whether the alternative of leaving the child in parental custody remains an available alternative. The Fifth Amendment does not reach that far. Unless questions are asked which would tend to incriminate the parent, the privilege does not apply.

The order of deprivation is affirmed.

PETRIE, C.J., and REED, J., concur.