[No. 5536–1.   Division One.   July 23, 1979.]

JAMES PETTET, ET AL, *Respondents,* v. WILLIAM L. WONDERS, *Appellant.*

DORE, J., dissents in part by separate opinion.

*Jerome L. Jager,* for appellant.

*Zylstra & Beeksma* and *Michael Waller,* for respondents.

ANDERSEN, J.—

## FACTS OF CASE

This is an action for breach of a conditional sale contract for the purchase of a business and an earnest money agreement for the purchase of real estate. William Wonders, the buyer, appeals from a judgment awarding James and Christina Pettet, the sellers, damages in the sum of $19,000 plus interest, costs and attorneys' fees in the sum of $3,150.

The buyer sought to purchase a business on Whidbey Island. In September of 1975, he responded to an advertisement offering the sellers' carpet and floor covering business in Oak Harbor for sale.

On September 23, 1975, the buyer met the real estate broker who had placed the advertisement and signed a conditional sale contract for the purchase of the sellers' business. The contract provided for a down payment of $18,000 and contained the following liquidated damages provision:

> And all payments theretofore made to the seller by the buyer shall be retained by the seller as the seller's own property, as compensation for the use and wear and depreciated value of said goods and chattels, and for the seller's loss and trouble.

On September 25, 1975, the buyer again met the broker and signed an earnest money agreement to purchase the real estate on which the sellers' business was located. This agreement provided for a down payment of $7,700 and provided that if the buyer failed or refused to complete the purchase, the earnest money would be forfeited as liquidated damages. The buyer signed a promissory note for the $1,000 earnest money on this agreement at that time.

Then, in November of 1975, the buyer breached both the conditional sale contract and the earnest money agreement by abandoning the upstairs apartment of the premises on which the business was located 20 days after taking it over and abandoning the sellers' business some 4 or 5 days after taking possession of it. This action by the sellers followed.

At trial, a promissory note dated October 29, 1975, and purporting to bear the buyer's signature, was admitted into evidence. The note for $24,700 (equalling the amount of the down payment on the conditional sale contract as well as the remainder of the down payment on the earnest money agreement) was made payable to the broker's real estate business and had been endorsed by him to the sellers. The broker testified very specifically that the buyer signed the note on October 29, 1975 in his (the broker's) office. The

buyer, on the other hand, testified that he did not go to the broker's office on that date and did not sign the note.

Also at trial, the buyer sought to cross–examine the seller concerning his comparative business profits before and after the breach, and regarding a later sale of the business to another buyer. Objections on the basis of relevancy were sustained by the trial court.

The trial court by its oral decision gave the sellers $1,000 as liquidated damages under the earnest money agreement. It resolved the testimonial conflict concerning the October 29 note by deciding that the buyer had indeed executed it, and awarded an additional $18,000 (representing the amount of the October 29 note attributable to the down payment on the sale of the sellers' business) as liquidated damages under the conditional sale contract.

After the trial, but before entry of the written findings of fact, conclusions of law and judgment, the buyer's attorney for the first time sent the October 29 note to a handwriting expert, who concluded that the buyer's signature thereon was indeed a forgery. The buyer then sought relief by filing a post–trial motion.[1] The trial court denied the motion and entered its written findings, conclusions and judgment for the sellers and against the buyer. The buyer appeals.

One ultimate issue is before us.

### ISSUE

Should the trial court have granted a new trial as to those aspects of the case to which the alleged forgery related?

---

[1]Although the post–trial motion was filed before the entry of written findings, conclusions and judgment, it is indicated therein to be a request for relief from a judgment pursuant to CR 60(b). It was also, however, treated by the parties and the trial court as seeking a new trial pursuant to CR 59. For that reason, and since we consider the same relief to be appropriate whichever rule was being proceeded under, we do not consider the form of the post–trial motion as determinative.

## DECISION
CONCLUSION. We hold that since the post–trial motion does raise a substantial issue as to whether or not fraud had been perpetrated on the court, as well as on the buyer, a new trial is necessary as to all issues potentially affected thereby.

No meritorious argument has been presented to this court that the $1,000 in liquidated damages awarded to the sellers under the earnest money agreement, or the pro rata share of the award of attorneys' fees attributable thereto ($165.79), was not proper. The sellers' judgment against the buyer to the extent of $1,165.79 must therefore be affirmed.

Further, no argument has been presented to us which would justify setting aside the trial court's finding that the buyer breached not only the earnest money agreement but also the conditional sale contract by abandoning the sellers' business. All of the remaining issues, however, depend in one degree or another, on whether or not the October 29, 1975 note for $24,700 allegedly signed by the buyer was a forgery. If it was, the provision for attorneys' fees therein would be a nullity. Similarly, since the liquidated damages clause in the conditional sale contract, set out above, refers to forfeiture of "all payments theretofore made to the seller by the buyer," there would be no such payments to forfeit if the buyer's signature on the note is a forgery.

The following are not contested. (1) C. G. Kelson, the questioned documents examiner who opined that the buyer's signature on the note is a forgery, is an acknowledged expert in this field of expertise. (2) The buyer's presentation in this regard was tardily made. (3) The trial court decided as to the forgery issue that "[a]s despicable as forgery is, it wouldn't have changed the result of this case." (4) For reasons of sound public policy, this court accords a high degree of discretion to the trial court in ruling on post–trial motions of this kind.

We further observe, however, that while we have the advantage of having the entire written record presented to

us to consider at this time, the learned trial judge was not accorded that same privilege. Furthermore, over 3 months elapsed after the trial court's oral decision and before the post–trial motion was filed.

A review of the entire record shows without question that the trial court placed great weight on the specific and detailed testimony of the broker. The trial court specifically so stated in its oral decision. If the note was in fact a forgery, however, it follows that the broker's testimony would be suspect not only as to the execution of the note but in all other material respects as well. Furthermore, the opinion of the questioned documents examiner as to the signature on the note being a forgery would not necessarily be the only testimony which would be presented on that issue if that aspect of the case is retried.

■■ The issue before us does not devolve to only whether the buyer was defrauded; therefore, we do not consider the sellers' claim as to the buyer's lack of diligence in the matter as being decisive. The issue thus raised also concerns whether or not a fraud has been perpetrated on the court based on a forgery and on perjured testimony given with reference to it.

Even where a judgment has already been entered, the courts of this state have long possessed the power to vacate a judgment for fraud. *Peyton v. Peyton,* 28 Wash. 278, 301, 68 P. 757 (1902). *See Parker v. Checker Taxi Co.,* 238 F.2d 241, 243 (7th Cir. 1956). Such authority is made explicit in CR 60(b) which is a counterpart of the similar federal rule, Fed. R. Civ. P. 60(b). The construction given to such federal rule is therefore pertinent to our discussion. *In re Green,* 14 Wn. App. 939, 942, 546 P.2d 1230 (1976).

Instructive is *Peacock Records, Inc. v. Checker Records, Inc.,* 365 F.2d 145, 147 (7th Cir. 1966):

> The factual question which the district court failed to answer is, "Was the judgment obtained in part by the use of perjury?" If it was, then it was clearly the duty of the district court to set aside the judgment, because poison had permeated the fountain of justice.

(Citation omitted.) Further, in *Associates Discount Corp. v. Goldman,* 52 F.R.D. 37, 40 (W.D. Pa. 1971), where the defendant sought to set aside a judgment on the ground that her signature on a guaranty agreement had been forged, the court held:

> Her neglect to act in her own interest, and her lack of diligence in discovering the new evidence which she now proffers are overcome in our view by the proffer of evidence to show that an employee of plaintiff signed the Continuing Guaranty on the line opposite her purported signature as witness to her signature. If the purported signature is in a fact a forgery, as she claims, then an employee of plaintiff participated in some degree in the fraud of misrepresentation.
>
> We deem this sufficient misconduct of an adverse party to support the grant of relief under Fed.R. of Civ.P. 60(b)(3).

Questions of fraud and perjury have been raised in this case which in our opinion are of such seriousness that they must be fully tried out. Since they permeate the record, a new trial is necessary on the issues to which they relate.

Since it may be determined at a new trial that the buyer's signature on the note is not a forgery and that perjury was not committed, two additional matters will be noted.

■ Whether the liquidated damages clause is enforceable, or is punitive and unenforceable, is a question of fact to be determined under the circumstances of the particular case. *Management, Inc. v. Schassberger,* 39 Wn.2d 321, 329, 235 P.2d 293 (1951). The central question in that regard is whether the liquidated damages clause is a reasonable forecast of just compensation for the harm caused by the breach. Restatement of Contracts § 339 (1932); *Management, Inc. v. Schassberger, supra* at 327–28; *Northwest Collectors, Inc. v. Enders,* 74 Wn.2d 585, 594, 446 P.2d 200 (1968).

Contrary to the claims made by the buyer, the fact that the clause called for liquidated damages for the breach of contract to purchase a business of close to 30 percent of the sales price does not, as a matter of law, establish such

clause to be punitive. *See Canady v. Knox,* 43 Wash. 567, 86 P. 930 (1906); *Jones–Short Motor Co. v. Bolin,* 153 Wash. 198, 279 P. 395 (1929); *Mead v. Anton,* 33 Wn.2d 741, 207 P.2d 227, 10 A.L.R.2d 588 (1949); *Puget Sound Power & Light Co. v. Shulman,* 84 Wn.2d 433, 526 P.2d 1210 (1974). Likewise the fact that the breach occurred only days after the buyer took over the business is not determinative in and of itself. *Daily v. Warren,* 16 Wn. App. 726, 558 P.2d 1374 (1977).

■ The trial court refused to admit testimony concerning the later sale of the business by the sellers to third parties, allegedly for some $23,000 more than the buyer in this case had agreed to pay for it. So far as the sellers' case was based on the liquidated damages clause, we cannot say that the trial court abused its discretion in this regard since the test of reasonableness under such a clause looks to the time that the agreement was entered. Restatement of Contracts § 339 (1932); *Management, Inc. v. Schassberger, supra; Northwest Collectors, Inc. v. Enders, supra.* Insofar as the sellers may possibly be considered as having been given the right by the trial court to show actual damages, however, such evidence would be relevant. *See Mahoney v. Tingley,* 85 Wn.2d 95, 99–100, 529 P.2d 1068 (1975).

■ The promissory notes were by their terms due and payable "on demand at closing only" and the sale did not close. We do not, however, address the issue of whether the notes ever became due and owing at all. Our reasons are these. First, "[w]e will not consider alleged errors that have not been pointed out in the assignments of error." *Sepich v. Department of Labor & Indus.,* 75 Wn.2d 312, 319, 450 P.2d 940 (1969). *See* RAP 10.3(a)(3); RAP 10.3(g); RAP 12.1(a). Second, "[c]ontentions that are not supported by argument or authority will not be considered by us." *Talps v. Arreola,* 83 Wn.2d 655, 657, 521 P.2d 206 (1974). Third, we are unaware of any authority for the proposition that a purchaser can wrongfully refuse to close a sales transaction and then, when sued, set up the failure to close as a defense.

The sellers' judgment against the buyer in the sum of $1,165.79 for damages due to the breach of the earnest money agreement and attorneys' fees in connection therewith is affirmed; and as to all issues flowing from the buyer's breach of the conditional sale contract to purchase sellers' business, the case is reversed and remanded for a new trial in conformity with this opinion.

WILLIAMS, J., concurs.

DORE, J. (concurring in part and dissenting in part)—I concur with the majority that the trial judge should have afforded the handwriting expert, C. G. Kelson, an opportunity to testify as to a possible forgery of the promissory note in question. However, in view of the fact that the trial court did not permit such testimony, I would now reverse both judgments granted on both promissory notes.

This action was filed originally by the plaintiffs as a specific performance action to require defendant Wonders to comply with an alleged purchase of Pettet's Floor Covering business and the building in which it was conducted.

At the opening of trial, plaintiffs' counsel advised the court as follows:

> I have given a notice of application for trial amendment, which I don't think is opposed. The complaint initially called for judgment on the promissory note, plus specific performance of the contract. We're not seeking any performance on the contract, but simply a judgment on the promissory note.

The trial court granted the motion to amend.

The two notes sued on were plaintiffs' exhibit 10 for $1,000, which was the earnest money on the business purchase agreement, and plaintiffs' exhibit 3 in the amount of $24,700, which allegedly represented the down payment on the building purchase. Both notes are identical, except for their dates of execution, amounts due and a provision for attorney fees.

Plaintiffs' exhibits 10 and 3 are illustrated on the following page.

804

DISCLOSURE STATEMENT.* Creditor represents as follows:

1. Proceeds . . . . . . . ....... .. $_____    3. Amount financed (1+2) . . . ...... . . $_____

2 Other charges financed (itemize)

... .. . . ...... . . ...... _____    4. **FINANCE CHARGE** ... . . $_____

... ... .. . ..... ...... . . _____    5. Total of payments ... . . . . ......... . $_____

. ........ . . . . ....... . . _____    **ANNUAL PERCENTAGE RATE** . . _____%

I (we) hereby acknowledge receipt of a copy of the foregoing disclosures pertaining to the obligation described below.
*(Federal "Truth-In-Lending Act" — For use by "Creditor" in "consumer credit" transaction.)

**NOTE**

$1,000.00    Bellevue, Washington, September 23, 19 75

ON DEMAND AT CLOSING ONLY    after date, for value received, we jointly and severally as

principals promise to pay to the order of International Properties Corporation

one thousand and no/100ths    DOLLARS,

with interest from default at the rate of 12 per cent per annum until paid.
Principal and interest payable in lawful money of the United States at 1840-130thNE, Bellevue, Wa,
In case default is made in the payment of this note and it is placed in an attorney's hands for collection I
agree to pay 100% per cent of the amount then due as attorney's fees if paid before suit is commenced; but
if suit is commenced to collect this note or any part thereof, I agree to pay 100% per cent of the
amount then due as attorney's fees; and in case suit is prosecuted to judgment, I agree to pay as attorney's
fees such amount as the court deems reasonable, and such amount shall be included in the judgment, and such
judgment shall bear interest at the rate of 12% per cent per annum.
All parties to this note, including guarantors, sureties and endorsers, hereby severally waive presentment, protest
and notice of non-payment, or any release or discharge arising from any extension of time of payment or from any
other cause, at or after maturity hereof.

This note is part of Earnest Money Receipt    William L. Wonders, a single man,
an Agreement marked 75/33/359/(1)
No._____ Due_____ at closing

Washington Legal Blank Co., Bellevue, Wa.    Form 46½P

---

DISCLOSURE STATEMENT.* Creditor represents as follows:

1 Proceeds ............. .. . .. ... . $_____    3. Amount financed (1+2) . . . ...... .. $_____

2. Other charges financed (itemize)

. . .. _____    4 **FINANCE CHARGE** .. . . $_____

. . .. ..... ..... _____    5. Total of payments ... . . $_____

. . ... .. .... _____    **ANNUAL PERCENTAGE RATE** _____%

I (we) hereby acknowledge receipt of a copy of the foregoing disclosures pertaining to the obligation described below.
*(Federal "Truth-In-Lending Act" — For use by "Creditor" in "consumer credit" transaction )

**NOTE**

$24,700.00    Bellevue, Washington, October 29, 19 75

ON DEMAND AT CLOSING ONLY    after date, for value received, we jointly and severally as

principals promise to pay to the order of International Properties Corporation

twenty four thousand seven hundred and no/100ths----------DOLLARS,

with interest from default at the rate of 12 per cent per annum until paid.
Principal and interest payable in lawful money of the United States at 1840-130thNE, Bellevue, Wa.
In case default is made in the payment of this note and it is placed in an attorney's hands for collection I
agree to pay 25% per cent of the amount then due as attorney's fees if paid before suit is commenced; but
if suit is commenced to collect this note or any part thereof, I agree to pay 50% per cent of the
amount then due as attorney's fees; and in case suit is prosecuted to judgment, I agree to pay as attorney's
fees such amount as the court deems reasonable, and such amount shall be included in the judgment, and such
judgment shall bear interest at the rate of 12% per cent per annum.
All parties to this note, including guarantors, sureties and endorsers, hereby severally waive presentment, protest
and notice of non-payment, or any release or discharge arising from any extension of time of payment or from any
other cause, at or after maturity hereof.

This note is part of Earnest Money Receipt    William L. Wonders, a single man,
an Agreement marked 75/33/359/(1)
No._____ Due_____ at closing

Washington Legal Blank Co., Bellevue, Wa.    Form 46½P

It is to be noted that both notes have the same time payment requirement, "On demand at closing only after date." However, both parties and the realtor McCorkle agreed that the transaction never closed. The realtor McCorkle specifically testified as follows:

Q Now, so we all understand, the deal never did close?
A [McCorkle] This deal did not close.
Q No cash was ever paid, no money has ever changed hands?
A That is correct.

As the sale never closed, admittedly there never was any demand on defendant for payment of the promissory notes.

Originally, in exhibit 1, the sellers Pettets, gave the purchaser Wonders an option to purchase the real estate for the sum of $82,000. Subsequently the option agreement was negated and replaced by an earnest money agreement to purchase the building outright to which was attached a real estate contract specimen form, which real estate contract was never signed by either party and contained no legal description of the property being purchased or any terms of purchase. Plaintiffs' exhibit 2 has been mistakenly identified in the testimony and in the findings of fact and conclusions of law as a real estate contract. At best it is an earnest money agreement for the purchase of real estate and is not a real estate contract. Plaintiffs did not have an executed real estate contract to enforce, and this was the obvious reason why they abandoned their action for specific performance of the real estate contract at the commencement of the trial and sued only on the promissory notes.

In order for the judgments awarded to plaintiffs to be upheld, the findings must be supported by substantial evidence. They are not in this case. Both promissory notes (plaintiffs' exhibits 3 and 10) provide that they shall be due and owing *if* and *when* the sales agreement for the purchase of the store and building are *closed, then* and *only then* will the principal amount of such notes be *due.* As admittedly the sales were never closed, the promissory notes

never became due and owing. It was error to enter judgments on the nondue promissory notes.

The majority, in refusing to recognize the undisputed evidence that the promissory notes even at this late date are still not due and therefore are not enforceable, skirt the issue by alleging:

First, "[w]e will not consider alleged errors that have not been pointed out in the assignments of error," . . . Second, "[c]ontentions that are not supported by argument or authority will not be considered by us."

(Citations omitted.) We agree with the majority's presentation of the law but this is not the factual situation here.

Defendant in his brief assigned errors, among others, to findings of fact Nos. III, IV, XI and XIV, which read as follows:

III

That thereafter on October 29, 1975 the defendant above named, executed a promissory note in the amount of $24,700.00, Exhibit "3," which constituted the down payment on the purchase of Pettet's Floor Covering business in the amount of $18,000.00 and the down payment on the purchase of the real estate as provided for in Exhibit "2".

IV

That on September 25, 1975 as part of the earnest money agreement for the purchase of the real estate, the defendant executed a promissory note in the amount of $1,000.00 as earnest money for the purchase of the real estate.

XI

That the promissory note, Exhibit "3" was valid and enforceable . . .

XIV

That the promissory note, Exhibit "3", provided for the payment of interest from the date of default therein at the rate of 12% per annum, and the Court finds that the date of default on said note was November 19, 1975, and that interest on said note at 12% per annum should commence from said date.

Defendant argued assignments of error based on findings of fact Nos. III and IV in his brief. However, in addition to

the specific assignments of error, defendant has consistently argued throughout these proceedings that he had no recollection of signing exhibit 3 ($24,700 promissory note) and has continuously challenged the judgment entered on such note. Plaintiffs waived their action for specific performance of the purchase agreements and elected to seek judgment only on the promissory notes. The court's finding of fact No. XI recites that the promissory note, exhibit 3, "was valid and enforceable . . ." Plaintiff's exhibits 3 and 10, duly admitted into evidence, say on their face that they are due and owing on demand at *closing only*. As it is undisputed among all parties that the sales agreements between the parties *never closed*, I must conclude the promissory notes are still not due and "findings of fact" finding such notes are enforceable must fail, for such notes are unenforceable until they are due, and demand for payment is made.

The enforceability of the promissory notes which are the subject of this lawsuit are properly before this appeals court for resolvement.

I would reverse and set aside both judgments.

Reconsideration denied August 16, 1979.

Review denied by Supreme Court December 7, 1979.