Merrimack County Probate Court
No. 79-190

*In re* FAY G.

March 5, 1980

*Upton, Sanders & Smith*, of Concord (*Gary B. Richardson* orally), for the female adult.

*Orr & Reno P.A.*, of Concord (*Howard M. Moffett* orally), for guardian ad litem of the female adult.

*Thomas W. Morse*, of Concord, by brief for the guardian ad litem of male child #2.

*Thomas D. Rath*, attorney general (*James E. Townsend*, assistant attorney general, orally), for the New Hampshire Division of Welfare.

KING, J.   This is an interlocutory appeal from a probate court order compelling a mother to undergo a psychiatric examination to determine whether grounds for termination of parental rights exist under RSA 170-C:5 IV. The mother and her guardian ad litem have objected to the order on the grounds that it violates her fifth amendment rights and her rights under part 1, article 15 of the New Hampshire Constitution not to give testimony against herself. They have also objected to the order on the grounds that the probate court lacked the authority at the time of its order to compel a psychiatric examination.

On August 11, 1978, the Concord District Court found that the child in question was a neglected child, awarded temporary custody to the New Hampshire Division of Welfare and ordered the mother to undergo psychiatric evaluation. On November 2, 1978, the division of welfare petitioned the Merrimack County Probate Court to terminate parental rights under RSA 170-C:5 IV alleging that the "Female Adult is incapable of providing proper parental care to her son due to Female Adult's mental illness."

On December 21, 1978, the division filed a motion for a psychiatric evaluation in the probate court "to determine whether because of mental deficiency or mental illness the Petitionee is and will continue to be incapable of giving the child proper parental care and protection for a longer period of time than would be wise or prudent to leave the child in an unstable or impermanent environment." Following a hearing on the motion, the Probate Court (*Burlingame*, J.) ordered the mother, over objection and exception, to make herself available for evaluation by two licensed psychiatrists or psychologists.

■ The first issue is whether the probate court had authority to order psychiatric evaluations. Effective August 21, 1979, N.H. Laws 1979, 332:2 amends RSA ch. 170-C by inserting, after section 9, language that confers on the probate court the power to order such a psychiatric evaluation under a RSA 170-C:5 IV proceeding. The mother argues that because N.H. Laws 1979, 332:2 (RSA 170-C:9-a) was applied to an order issued prior to the effective date of that statute, the probate court allowed the retrospective application of the statute in contravention of part 1, article 23 of the New Hampshire Constitution. Because N.H. Laws 1979, 332:2 is procedural, we find its application to the court's order of March 19, 1979, not in violation of the mother's constitutional rights. *Riesenberg v. State*, 115 N.H. 12, 13, 332 A.2d 393, 394 (1975).

■ The second issue is whether a compelled psychiatric examination ordered in a proceeding to terminate parental rights under RSA 170-C:5 IV abridges a parent's constitutional rights. The mother argues that her fifth amendment privilege against self-incrimination is violated if she is forced to submit to a psychiatric examination. Although this right is not restricted to criminal trials, the right may be invoked only if disclosure could be incriminating or if it could lead to incriminating evidence. *Malloy v. Hogan*, 378 U.S. 1, 12 (1963); *In re Green*, 14 Wash. App. 939, 944, 546 P.2d 1230, 1233 (1976); *see In re Gault*, 387 U.S. 1, 47–48 (1967).

■ The mother in this instance does not claim fear of criminal prosecution; rather, she claims that an evaluation based on her testimony would be used to take away other constitutionally protected rights. We find neither merit nor authority to apply the privilege in this context, and therefore, find no violation of the mother's right against self-incrimination.

The mother next argues that a court order compelling an involuntary psychiatric examination under RSA 170-C:9-a violates her right to enjoy life, liberty and the pursuit of happiness, and

violates her fundamental rights of freedom from restraint and personal privacy. This court has recognized that the family and the rights of parents over it are fundamental and inherent within the federal and our own State constitutions. *State v. Robert H.*, 118 N.H. 713, 393 A.2d 1387 (1978). To protect these rights, this court has ruled that in order to terminate them under RSA ch. 170, the State must prove its case "beyond a reasonable doubt." *Id.* at 716, 393 A.2d at 1389.

In many termination proceedings, the State might be unable to meet its burden if the parent simply refuses to undergo psychiatric evaluation. Even in the case of a neglect proceeding, in which this court has held the standard of proof to be "by clear and convincing evidence," it was also held that psychiatric evidence, including testimony of a treating psychiatrist, would be admissible notwithstanding a claim of statutory privilege because without this evidence "the State [would] be unable to bear its burden of proof." *In re Brenda H.*, 119 N.H. 382, 402 A.2d 169 (1979).

■■ Because a parent's mental incapacity affects the parent's ability to care for the child and, therefore, may constitute grounds for termination, the issue of admissibility of psychiatric tests involves the protected rights of the child. Specifically, the State seeks to protect the best interests of the child by removing him from an environment in which "the parent is and will continue to be incapable of giving the child proper parental care and protection for a longer period of time than would be wise or prudent to leave the child in an unstable or impermanent environment." The dominant consideration of the court in these proceedings should be the welfare of the child, which must prevail over conflicting rights of the parent. *In re Green supra* at 945, 546 P.2d at 1234. Allowing the probate court the discretion to compel a psychiatric examination helps protect the child's welfare by permitting the acquisition of information essential to the disposition of proceedings to terminate parental rights. Without this information, the court might be unable to determine whether parental rights should be terminated, *In re Brenda H. supra,* and children would remain with parents who could not properly provide for their welfare. Accordingly, we hold that if the issue of mental illness of a parent is properly raised under RSA ch. 170-C, and if a preliminary showing bearing adversely on the question of parental mental illness is made, the best interests of the child dictate that the parent submit to a court-ordered psychiatric evaluation.

We do not rule that Laws 1979, 332:2 grants unrestricted power to order psychiatric examinations in all proceedings to terminate

parental rights. In the instant case, however, based upon the testimony of both a physician and a social worker who had observed the female adult, and based upon her persistent attempts to treat and dress her son as a girl, the probate court properly found cause to order the psychiatric studies.

We hold that N.H. Laws 1979, 332:2 will not be invoked in every proceeding to terminate parental rights, but only where reasonable cause exists. In its motion, the division of welfare alleged "reasonable cause" to order the psychiatric examination. Here, in the context of a petition filed under RSA 170-C:5 IV, the cause justifying the examination is especially compelling. We therefore affirm the probate court's order.

*Appeal dismissed.*

All concurred.