# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MICHAN RHODES, an individual; KEYSTONE WINDOWS AND DOORS, INC., a Washington corporation,<br><br>           Respondents,<br><br>        v.<br><br>EMILY SHARP RAINS and MICHAEL RAINS, individually and their marital community; RAINS LAW GROUP, PLLC, a professional limited liability company,<br><br>           Appellants,<br><br>HEATHER CHRISTIANSON and JOHN DOE CHRISTIANSON, and their marital community,<br><br>           Defendants. | No. 80571-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

APPELWICK, J. — Rains appeals the trial court's denial of her CR 60(b) motion. She argues the trial court abused its discretion in finding that she did not bring her motion within a reasonable amount of time, and that she did not prove fraud by clear and convincing evidence. We affirm.

FACTS

Michan Rhodes is the former owner of Keystone Windows and Doors Inc. In 2011, Rhodes approached Emily Rains for assistance with Keystone's financial

Citations and pin cites are based on the Westlaw online version of the cited material.

planning and accounting. Rains is the owner of Rains Strategic Accounting LLC[1] and Rains Law Group PLLC.

In December 2012, Rhodes and her company, Keystone, brought suit against Rains, her husband Michael Rains, and others for a series of wrongs she alleged were committed during their business relationship. She asserted three claims: (1) legal malpractice; (2) breach of fiduciary duty; and (3) breach of the Consumer Protection Act (CPA), chapter 19.86 RCW. The trial court dismissed claims (1) and (3) on summary judgment. Only the breach of fiduciary duty claim went to trial. A jury found Rains liable on this claim in September 2014. Judgment was entered on November 5, 2014.

Both sides appealed to this court. We dismissed Rains's cross appeal and considered only whether the trial court erred in dismissing Rhodes's CPA claim on summary judgment. See Rhodes v. Rains, 195 Wn. App. 235, 250, 381 P.3d 58 (2016). We concluded that the trial court had erred and remanded for a trial on the CPA claim. See id. at 250-51.

While preparing for the 2018 trial[2] Rains "discovered" what she believed to be evidence of fraud in the first trial. The evidence was a backup copy of

---

[1] Appellants admit that at some point, Rains Strategic Accounting changed its name to "Rains and Rains Consulting [LLC]." For clarity, we refer to the entity as RSA-R&R throughout the opinion.

[2] We refer to the second trial, on the CPA claim, as the 2018 trial, and the first trial, on the breach of fiduciary duty claim, as the 2014 trial for clarity. The trials had different judges. A jury found Rains liable for the CPA claim in the 2018 trial. Her appeal of that trial is pending before this court. Rhodes v. Rains, No. 79173-7-I.

QuickBooks[3] records from her last day working at Keystone on October 17, 2012. She admits the backup was in her possession and has apparently been in her possession since October 17, 2012, well before the start of the first trial. She claims she had no time to have an expert examine the files prior to the second trial, but that she printed out an audit trail and sought to introduce it as an exhibit at that trial.

After the conclusion of the 2018 trial, Rains received the reports of two experts she had hired to analyze the QuickBooks backup in her possession. Rains claims their findings prove that Rhodes falsified exhibits at the first trial. Specifically, she claims her backup file proves that QuickBooks entries presented as exhibits 30 and 97[4] at the first trial were created after Rains left Keystone. This is so because the experts determined that those specific entries do not appear in Rains's backup of Keystone's QuickBooks records.

Grace Alonzo was a bookkeeper for Rains and later "help[ed]" Rhodes. Exhibits 30 and 97 were introduced at the first trial and supported her testimony. She testified that during the time she was doing bookkeeping on the Keystone account, she found in QuickBooks an invoice from RSA-R&R which contained duplicative billing. She reported this invoice to Rains and was told to report it to

---

[3] QuickBooks is an accounting software package that Keystone used to keep track of its finances.

[4] Exhibit 97 is sometimes referred to as exhibit 7, its designation during Grace Alonzo's deposition. Because the exhibit was marked as 97 for trial, we refer to it as such.

Michael.[5]  She printed out a physical copy of the invoice and sent an e-mail to Michael with the invoice number.  Once she had done so, Michael called her and told her the bill did not exist.  Alonzo went back into the system and discovered that the invoice had been voided out of the system.  But, when Alonzo went through the books with Rhodes a year later, she discovered that the invoice had been put back in the system and paid.  She testified that page 75 of exhibit 30 was evidence of the now-paid invoice she found in QuickBooks.

Pages 1 and 2 of exhibit 97 are an invoice from RSA-R&R to Keystone. That invoice details charges for about 129.86 hours worked by RSA-R&R employees.  The invoice billed all hours at an hourly rate of $37.50, for a total of $4,863.79.  It appears to have duplicate entries.  Rains's experts do not challenge the legitimacy of this invoice.  Further, Rains's experts agree that the invoice was entered into QuickBooks on March 9, 2012.  It appears in the QuickBooks backup in Rains's possession as invoice number 20120219-20120303.   Rains's QuickBooks backup indicates that RSA-R&R was only paid $3,504.31 on the invoice.

Pages 4 through 9 of exhibit 97 are screen captures of a QuickBooks entry that depicts a QuickBooks picture of a check dated March 9, 2010, made payable to RSA-R&R in the amount of $3,504.31.  The details pictured in the screen capture for that check shows 93.4 hours at $37.50 per hour.  The memo line of the pictured

---

[5] We refer to Michael Rains by his first name for clarity.

4

check says that it was voided but the there is a paid stamp on the picture of the check. The line item descriptions in the screen captures appear to be identical to those in the invoice at pages 1 and 2 of exhibit 97. The reference number, 20120219-20120303, is identical to the version that appears in Rains's backup.

Pages 75 through 77 of exhibit 30 are also screen captures of a QuickBooks entry. It is slightly different than that at exhibit 97, but the reference number, line item descriptions, hours, hourly rate, and the resulting amount is the same.

Rains's experts determined that the versions of the QuickBooks entries that appear at exhibit 97 pages 4 through 9 and exhibit 30 pages 75 through 77 do not appear in Rains's QuickBooks backup. The version in the exhibits is different than the version in Rains's backup[6] in two ways. First, although the work descriptions are the same, the Alonzo version shows the hours for each entry as "0," except for the first entry, which had been changed to "93.4." Which, when multiplied by the hourly rate of $37.50, equals $3,504.31, the total amount that had been paid on the RSA-R&R invoice. Second, the Alonzo version shows a balance due to RSA-R&R of $0, whereas the version in Rains's backup shows a balance due to RSA-R&R on the invoice.

Believing this evidence proved that Rhodes had committed a fraud upon the court in the 2014 trial, Rains filed a CR 60(b) motion to vacate the judgment in that

---

[6] He does not provide a copy of the "version" in the "QuickBooks file" that he discusses in his report and we do not find them in the record. The only evidence of an invoice in the record is the invoice at exhibit 97 page 1 and 2.

case. She filed her motion with the trial judge in the 2014 trial after the conclusion of the 2018 trial. Rains also claims that she asked the trial judge in the 2014 trial to vacate the judgment in the 2018 trial as part of her CP 60(b) motion. Claiming that the alleged fraud also affected the appeal of the first trial, she also filed, in this court, a motion, under RAP 12.9, to recall mandate for appeal no. 72801-6-I, Rains, 195 Wn. App. 235. The trial court denied her CR 60(b) motion for the first trial and did not address her request to vacate the judgment in the second trial.

Rains appeals the trial court's denial of her CR 60(b) motion. Her motion to recall the mandate in appeal no. 72801-6-I, Rains, 195 Wn. App. 235 is still pending before this court.

## DISCUSSION

Rains argues that the trial court abused its discretion in finding that her CR 60(b) motion was untimely and rejecting it on the merits. She also argues the trial court erred in declining to consider her request to have the second trial vacated as well. Last, she urges this court to recall the mandate in the appeal of the first trial, no. 72801-6-I, Rains, 195 Wn. App. 235. We review the trial court's denial of a CR 60(b) motion for abuse of discretion. Luckett v. Boeing Co., 98 Wn. App. 307, 309, 989 P.2d 114 (1999).

I. Timeliness

Rains argues that the trial court erred in finding that she did not bring her CR 60(b) motion within a reasonable time. Rains sought relief from judgment

6

under CR 60(b)(4) and (11). A CR 60(b) motion under these subsections must be made within a reasonable time. What constitutes a reasonable time depends on the facts and circumstances in each case. Luckett, 98 Wn. App. at 312. Major considerations in determining timeliness include the prejudice to the nonmoving party due to the delay and whether the moving party had good reasons for not taking appropriate action sooner. Id.

Both factors weigh against Rains here. Rains waited almost five years from the judgment date of the first trial to file her motion. During that time, this case has gone through an appeal, another trial, and has another appeal pending. See Rains, 195 Wn. App 235; Rains, No. 79173-7-I. Considerable prejudice to Rhodes would result in relitigating these issues. More importantly, Rains has provided no satisfactory explanation for why she waited so long to file her motion.

Rains claims she "discovered" the QuickBooks backup before the 2018 trial. Newly discovered evidence is that which could not have been discovered with due diligence. CR 60(b)(3). Parties seeking relief on this ground are required to show that the exercise of such diligence would not have uncovered the evidence. Jones v. City of Seattle, 179 Wn.2d 322, 360, 314 P.3d 380 (2013). But, Rains admits the backup files were in her possession and have been since October 17, 2012, well before the start of the first trial. Her only explanation is that she "did not know she had [it]."

7

The discrepancies between the invoice in her backup file and the screenshots she now claims are fraudulent were plain on the face of the exhibits at the time of the first trial. Her own expert acknowledges that the invoice that appears in her records also appears on the very first two pages of the exhibit she now claims is fraudulent. He goes on to point out that the allegedly fraudulent QuickBooks entries appear on the following seven pages of the exhibit. Nothing in the record suggests that Rains, or someone at her direction, could not have made these same comparisons at the first trial. Rains did not exercise due diligence. The discrepancy in the documents Rains relies on is not newly discovered evidence. She may not rely on that discrepancy to excuse her delay in seeking relief under 60(b).

Rains seeks to excuse her lack of diligence by arguing that the fraud affected both the 2018 and 2014 trials.[7] Thus, she claims, she "promptly filed after receiving the 2018 trial transcript evidencing the fraud." But, her diligence is not evaluated by the timeliness of her actions relative to the experts' reports. Her diligence must be evaluated based on what she knew at the first trial. In 2012, she

---

[7] Rains claims the trial court erred in declining to consider her request to vacate the 2018 judgment, which she requested in the reply brief in support of her CR 60(b) motion to vacate the judgment in the 2014 trial. Rains cites no authority that would give the judge in the first trial the authority to vacate the judgment in the second trial. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). We find that the trial court did not err in declining to consider her request.

had the only evidence she needed to make her claim, the exhibits offered at the first trial and her own QuickBooks backup.

Rains appears to argue that Pettet v. Wonders stands for the proposition that the reasonable time bar does not apply if there is perjury in a case. 23 Wn. App. 795, 800, 599 P.2d 1297 (1979). We disagree. The Pettet court was faced with claims of forgery and perjury. Id. at 801. It nonetheless weighed the reasonableness of the time it took to file a 60(b) motion based on the facts and circumstances of the case. Id. It did not establish an exception to the rule. It would not excuse Rains's delay in this case, even if she had raised sufficient evidence of fraud.

Given Rains's unsatisfactory reason for her delay and the prejudice to Rhodes that would result from it, the trial court did not abuse its discretion in finding Rain's motion untimely.[8] For these same reasons, her motion to recall the mandate on appeal is also untimely.[9]

---

[8] Because the issue of timeliness is dispositive, we need not reach the issue of whether Rains proved fraud by clear and convincing evidence. CR 60(b)(4) requires a party to show that the fraudulent conduct caused entry of the judgment such that the losing party was prevented from fully presenting their case or defense. Lindgren v. Lindgren, 58 Wn. App. 588, 596, 794 P.2d 526 (1990). All the evidence necessary to raise the claim of fraud she seeks to assert was in Rains's possession at trial. She therefore is unable to show that Rhodes prevented her from asserting this claim at trial.

[9] A motion to recall the mandate on appeal must be made within a reasonable time. RAP 12.9. Our determination that the motion was not made in a reasonable time is independent of the trial court's determination that the CR 60(b) motion was not made in a reasonable time.

II. Attorney Fees

Both sides request attorney fees and costs on appeal under RAP 14.2 and 18.9. Because Rhodes has substantially prevailed on review, we award her costs under RAP 14.2. Because we find Rains's appeal is frivolous, we also award Rhodes attorney fees under RAP 18.9.

We affirm the trial court's denial of Rains's CR 60(b) motion and deny her motion to recall the mandate in appeal no. 72801-6-I, Rains, 195 Wn. App. 235. We award Rhodes attorney fees and costs.

_Appelwick, J._

WE CONCUR:

_Chun, J._       _Mann, C.J._