22 P.3d 283 (2001)
106 Wash.App. 85
In re the DETENTION OF Eddie Leon WILLIAMS, Jr.
State of Washington, Petitioner,
v.
Eddie Leon Williams, Jr., Respondent.
In re the Detention of Darren R. Strong.
State of Washington, Respondent,
v.
Darren R. Strong, Petitioner.
Nos. 45761-6-I, 46422-1-I.
Court of Appeals of Washington, Division 1.
May 7, 2001.
*285 David J.W. Hackett/45761-6-I, 46422-1-I, Deputy Pros. Atty., for the State.
David A. Trieweiler/46422-1-I, Seattle, for Petitioner Strong.
Bernadette J. Foley/45761-6-I, Terrance Kellogg, Seattle, for Respondent Williams.
*284 BAKER, J.
The State filed petitions to commit Darren Strong and Eddie Leon Williams, Jr. as sexually violent predators pursuant to RCW 71.09. The trial court in each case found probable cause and assigned them for trial. The State moved for a CR 35 psychological examination of the defendants. In Strong's case, the trial court granted the motion, and Strong appeals. In Williams' case, the trial court denied the motion, and the State appeals. *286 In addition, Strong appeals an order granting the State's motion to compel discovery of his Social Security records; and the State appeals an order quashing its video deposition of Williams.
We decline to issue a blanket prohibition on discovery under the civil rules in RCW 71.09 cases, and accordingly hold that the State may obtain a CR 35 examination upon a showing of good cause. In Strong's case, we hold that the trial court did not abuse its discretion in ordering a CR 35 examination. In Williams' case, we remand to the trial court to evaluate whether good cause existed to grant the State's CR 35 motion. We further hold that Strong's Social Security records in the possession of his attorney are not protected from disclosure by the work product doctrine or by RPC 1.6(a). Lastly, we reverse the trial court's order quashing the video deposition of Williams.

I
Darren Strong
The State filed a petition to commit Darren Strong as a sexually violent predator. At the probable cause hearings, the State submitted one report by Dr. Richard Packard, a privately employed psychologist retained by the King County Prosecutor's Office for this case, along with two reports by Dr. Paul Daley, a consulting psychologist at Clallam Bay Corrections Center. Dr. Daley examined Strong in 1994 and 1999 in support of an RCW 71.09 petition, and concluded that Strong's mental abnormalities made it highly likely that Strong would commit further acts of predatory sexual violence. Dr. Packard never met or interviewed Strong, but opined that Strong was a sexually violent predator based on a review of Dr. Daley's reports and other records. The trial court found probable cause to hold Strong in custody as a sexually violent predator pending trial.
The State obtained a letter from the Social Security Administration (SSA) seeking information from the Department of Corrections regarding allegations of pedophilia in connection with a disability claim made by Strong. The State learned that Strong had been examined by psychologist Dr. Jeffrey Ulmer in connection with this disability claim. Given the potential significance of these examination results, the State issued a subpoena duces tecum to the SSA, but received no response. The State also subpoenaed Dr. Ulmer. Strong filed a motion for protective order seeking to quash the subpoena directed at Dr. Ulmer and to prohibit the State from obtaining his Social Security records. The trial court denied Strong's motion, holding that Strong failed to identify a privilege that would prevent the State's discovery of his Social Security records. The State then served Strong's counsel with a request to produce documents from Strong's Social Security files. Strong objected, arguing that the materials were nondisclosable based on the federal Privacy Act and the work-product privilege. The State filed a motion to compel. The trial court granted the State's motion and ordered Strong to (1) produce a privilege log covering all documents in the possession of Strong or his attorney that were withheld pursuant to a claim of privilege; (2) disclose all of Strong's Social Security records in the possession of Strong or his attorney; and (3) acquire and disclose, or sign a release permitting the State to acquire, all of Strong's Social Security records directly from SSA.
The State also moved for a CR 35 psychological examination of Strong, to be performed by Dr. Packard. The State submitted a declaration from Dr. Packard outlining the nature of the exam and explaining that it was necessary to achieve an accurate, current assessment of Strong's mental state. The trial court granted the State's motion over Strong's objection, finding that Dr. Packard specializes in the treatment of sex offenders, that Strong's mental condition was in controversy, and that there was good cause for compelling the examination. This appeal followed.
Eddie Leon Williams
Prior to his scheduled release from prison, psychologist Dr. Iris Rucker performed an evaluation of Williams in order to determine whether he might be a sexually violent predator as defined by RCW 71.09. Dr. Rucker recommended civil commitment, and the *287 State filed a petition to commit Williams as a sexually violent predator.
The State's petition was supported by the certification for determination of probable cause and a report authored by Dr. Leslie Rawlings, a licensed psychologist and certified sex offender treatment provider retained by the King County Prosecuting Attorney for this case. Dr. Rawlings opined that Williams would more likely than not engage in further acts of predatory sexual violence if released. However, because of "unusual time constraints in this case," Dr. Rawlings' opinion was based solely on a review of available records, rather than his preferred method of interviewing the person who is the subject of the evaluation. The trial court found probable cause to believe that Williams is a sexually violent predator. The case was set for trial, and both sides commenced discovery.
The State sought to compel a CR 35 psychological evaluation of Williams by Dr. Rawlings. Williams opposed the State's motion, claiming that an evaluation would violate his constitutional privacy rights and that RCW 71.09 was punitive as applied, thereby allowing him to assert a Fifth Amendment right to remain silent. He also argued that his mental condition was not in controversy and that there was no good cause for the evaluation because Dr. Rucker had already conducted tests and interviews and produced a report. The trial court denied the State's motion on the grounds that "compelling the respondent to submit to such an examination is not warranted by the Civil Rules, nor by the provisions of RCW 71.09."
The State then filed a renewed motion for a CR 35 evaluation in light of the Washington Supreme Court's decisions in In re Detention of Turay,[1] and In re Detention of Campbell,[2] contending that the court in Turay and Campbell rejected most of the arguments relied upon by Williams in opposing the State's prior motion for a CR 35 evaluation. However, the State did not file a motion for reconsideration within the time constraints of CR 59(b). The trial court denied the State's renewed motion without comment.
The State also sought a video deposition of Williams. Williams moved to quash the deposition, citing privacy interests, infringement of his Fifth Amendment rights, and other discovery protections under CR 26. The trial court granted Williams' motion, stating that "[t]he respondent may decline to have his deposition taken; provided, however, that respondent, by declining to be deposed, may not testify at trial."
The State appealed. This court granted discretionary review and consolidated Williams' appeal with Strong's.

II
Discovery rulings are reviewed for abuse of discretion.[3] There is an abuse of discretion when the discretion exercised is manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.[4]
Strong and Williams cite In re Detention of Aguilar[5] and In re Detention of Broer[6] for the proposition that CR 35 does not apply in RCW 71.09 proceedings. In Aguilar, the defendant argued that evidence obtained during his statutorily mandated RCW 71.09.040[7] psychological evaluation should have been excluded because the State failed to meet the CR 35 showing of "good cause."[8] The court rejected this argument, noting that *288 under CR 81[9] statutory procedural rules for special proceedings supercede conflicting general civil rules. Accordingly, the court held that the special proceedings for sexually violent predator petitions found in RCW 71.09.030 and .040 supercede CR 35's requirement that good cause be shown in order to compel an examination.[10] Similarly, in Broer, the defendant argued that the trial court erred by compelling the statutorily mandated mental examination without requiring a showing of good cause as required by CR 35. We rejected the defendant's argument and held that:
[w]e agree with the court in Aguilar that the proceedings specified in RCW 71.09 are special proceedings as that term is used in CR 81.
...
We conclude that the requirement of showing good cause in CR 35 is inconsistent with the statute's directive that upon a determination of probable cause, an examination shall be conducted. In short, the statute controls and there is no requirement for a CR 35 showing of good cause for a court to order a mental examination in this special proceeding.[[11]]
According to Strong and Williams, Aguilar and Broer indicate that CR 35 has no applicability in an RCW 71.09.040 proceeding. As a result, the State cannot seek a CR 35 examination in addition to the mandatory RCW 71.09.040(4)[12] mental health examination. The State argues that Aguilar and Broer stand merely for the proposition that the mandatory evaluation required by RCW 71.09.040(4) is a "special proceeding" that must be ordered by the court without regard to proof of additional factors that would be required if the evaluation were proceeding pursuant to CR 35. According to the State, there is nothing in RCW 71.09 to displace operation of CR 35 where, as here, the State seeks a CR 35 evaluation that is outside the scope of the statutory evaluation.
The State's reading of Aguilar and Broer is correct. Under CR 81(a), the civil rule must be inconsistent with rules or statutes applicable to special proceedings if the civil rule is to be inapplicable. Essentially, CR 81 mandates that the civil rules control unless there is a statute governing special proceedings that is inconsistent with the rules. There is nothing in RCW 71.09 that would prevent additional discovery beyond that required by statute, including a CR 35 psychological examination. In accord with CR 81, appellate courts have routinely applied the civil rules to RCW 71.09 cases when the rules are not inconsistent with that statute.[13]
Strong and Williams rely heavily on Sporich v. Superior Court of Ventura County[14] for the broad proposition that there is no additional discovery allowed in RCW 71.09 cases. In Sporich, the California court of appeals held that the prosecutor could not obtain an additional mental health examination outside of the two provided for under California's sexually violent predator act.[15] But in California, unlike Washington, civil procedures are defined primarily by statute, not court rule. California courts "lack the power to embroider the statutes to provide greater discovery beyond those afforded by *289 statute."[16] In Washington, however, CR 81 mandates that the civil rules govern when the rules are not inconsistent with statutory special proceedings. Sporich is not persuasive authority here.
Next, Strong and Williams argue that even if CR 35 applies to RCW 71.09 proceedings, the trial court should not have ordered an additional mental examination because the State failed to demonstrate that there was good cause for the additional examinations or that the defendants' mental states were in controversy, as required by CR 35. The State contends that good cause is present almost as a matter of law in RCW 71.09 cases, and that it provided ample evidence to meet the "good cause" and "in controversy" requirements in both cases.
CR 35(a) provides that when the mental or physical condition of a party is in controversy, the court may order an examination "only on motion for good cause shown...." The seminal case discussing the CR 35 "good cause" and "in controversy" requirements in the Federal Rules of Civil Procedure is Schlagenhauf v. Holder.[17] In Schlagenhauf, the Court noted that "the deposition-discovery rules are to be accorded a broad and liberal treatment...."[18] Nevertheless, the "in controversy" and "good cause" requirements
are not met by mere conclusory allegations of the pleadingsnor by mere relevance to the casebut require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination. Obviously, what may be good cause for one type of examination may not be so for another. The ability of the movant to obtain the desired information by other means is also relevant.[[19]]
Washington courts accepted and interpreted the Schlagenhauf analysis as to our own rules of civil procedure in In re Green,[20] holding that
the "good cause" and "in controversy" requirements for a CR 35(a) mental or physical examination (1) are not mere formalities, but must be affirmatively satisfied by the movant; (2) will not ordinarily bebut may beestablished by the pleadings alone; and (3) repose discretion in the trial judge to decide whether they have been met in a particular case.[[21]]
Notably, Strong and Williams do not challenge the State's assertion that sexually violent predators suffer from mental abnormalities, nor that they may pose a future danger. Instead, they argue that good cause is not present because they have already been subjected to numerous examinations, interviews, and tests, resulting in detailed reports in which psychologists have concluded with a reasonable degree of medical certainty that they ought to be committed as sexually violent predators. Furthermore, the State can use the results of the RCW 71.09.040(4) examination for its own purposes. They assert, under these circumstances, that yet another examination is unwarranted.
There are a variety of factors that may contribute to a showing of good cause. For example, good cause for an additional examination will exist when the State can show that the RCW 71.09.040(4) examination is insufficient. This may occur where the mandatory examination was performed by a psychologist who lacks expertise in evaluating sex predators, or where the previous examinations were not recently conducted. The State need not wait for the results of the RCW 71.09.040(4) examination to seek an additional evaluation by its own expert.[22] *290 Trial is set for 45 days after the filing of a sexually violent predator petition.[23] Requiring the State to wait for the results of the RCW 71.09.040(4) evaluation would probably not give the State enough time to obtain a CR 35 examination by its own expert.
Of course, the State is not automatically entitled to repeated psychological evaluations whenever it wishes. An affirmative, fact-based showing of good cause is required in each case.
In Strong's case, we conclude that the trial court did not abuse its discretion in ordering a CR 35 examination. The State argued that there was good cause to allow Dr. Packard to conduct a personal evaluation of Strong because (1) Dr. Packard testified that a personal interview is "standard and professional practice" and "critical" to ensuring an accurate diagnosis; (2) Strong attempted to exploit this weakness during cross-examination in the probable cause proceeding by challenging Dr. Packard's opinion based on the lack of an interview; (3) Dr. Daley's 1994 and 1999 reports are outdated and filled with caveats about the accuracy of his opinion; and (4) Dr. Daley's exams were conducted in order to determine whether to refer Strong for commitment, and are clearly insufficient for use in proving the case beyond a reasonable doubt. These factors all contribute to an adequate showing of good cause.
In Williams' case, the trial court denied the State's CR 35 motion without comment. It is impossible to discern whether the trial court's decision was based on an erroneous belief that CR 35 does not apply in civil commitment proceedings, or whether it addressed the issue of good cause. Therefore, we remand this matter to the trial court to exercise its discretion, consistent with this opinion, in evaluating whether good cause existed to grant the State's motion for a CR 35 examination.
Our result is not altered by Strong and Williams' argument that a compelled CR 35 examination infringes on their federal and state constitutional right to privacy. In Washington, sex offenders' privacy interests are "truncated" by the "substantial public safety interest" involved when trying to evaluate the recidivism tendencies of a known sex offender.[24] The defendants' abridged privacy rights must yield when the State demonstrates good cause under CR 35 to conduct an additional examination.
Lastly, Williams contends that the State's failure to timely appeal the denial of its first CR 35 motion precludes appellate review. We previously considered and rejected Williams' arguments on this issue when we granted discretionary review of the trial court's order denying a motion to reconsider the CR 35 examination motion. We decline to reconsider our ruling.

III
Strong argues that the trial court erred in ordering him to either acquire and obtain his Social Security records directly from the SSA, or execute a release allowing the State to obtain the records. He contends that his Social Security records are protected from disclosure by federal statutes and regulations, including the Freedom of Information Act (FOIA);[25] the Privacy Act of 1974;[26] and the Social Security Act.[27] Relying primarily on Laxalt v. McClatchy,[28] the State contends that the statutory non-disclosure and records confidentiality provisions of the Privacy Act do not create an evidentiary privilege under CR 26.[29]
Because the Social Security Administration advised the State that it could not locate Strong's records and suggested that they may have been destroyed, this issue is moot. Issues are moot when the court can no longer provide effective relief and *291 only abstract questions remain.[30] Therefore, we decline to review this issue.[31]
Strong also argues that the Social Security records in the possession of his attorney are protected from disclosure by the work product doctrine. Strong contends that the Social Security documents are work product because they were gathered by his attorney solely for this litigation, and that the State has failed to demonstrate a compelling need for them because it has not demonstrated what documents are in the file and does not need the Social Security records to prosecute its case.
CR 26(b)(4)[32] defines the nature and scope of the work product doctrine. "The basic rationale of the work product doctrine is that it is unfair to permit the adverse party to feed on the industriousness or the wits of the party from whom discovery is sought."[33] In a civil case, protected work product may include "factual information which is collected or gathered by an attorney, as well as the attorney's legal research, theories, opinions and conclusions."[34] For work product to apply, the document must have been prepared in anticipation of litigation.[35] An exception exists where a party demonstrates a compelling need for the information and an inability to obtain it by any other means.[36]
Here, the SSA prepared the documents in order to evaluate Strong's claim for disability benefits, not in anticipation of litigation. While protected work product may include "factual information," the mere act of obtaining documents from a client that were prepared by a third party prior to the litigation does not render them work product. The purpose of the doctrine is best served by limiting the scope of the protection to information that the attorney actively prepared or gathered from a source other than the client. Under Strong's interpretation of the doctrine, a litigant could shield sensitive documents from discovery simply by giving them to his attorney. The work product doctrine cannot be used to subvert discovery in this manner. It was not an abuse of discretion for the trial court to refuse to apply the work product doctrine here.
Next, Strong asserts that the records are protected from disclosure by RPC 1.6(a), which states that "[a] lawyer shall not reveal confidences or secrets relating to representation of a client unless the client consents after consultation...." The Rules of Professional Conduct define "confidences" as "information protected by the attorney-client privilege under applicable law," and "secrets" as "other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." Because Strong gave his attorney permission to view the records with the understanding that only his attorney would view them, he contends that RPC 1.6 applies.
*292 We reject Strong's interpretation of RPC 1.6. Undoubtedly, some parties would prefer to conceal much of the material sought by opposing counsel in discovery. But Strong cannot create a new evidentiary privilege by instructing his attorney to keep crucial documents secret, then claiming that he does not have documents that are in the possession of his attorney.
Strong also argues that the Social Security records are not discoverable because the State cannot obtain discovery beyond that specifically authorized under RCW 71.09 "special proceedings." We considered and rejected the identical argument with respect to CR 35 above. Lastly, Strong contends that the State failed to demonstrate that the documents were relevant under CR 26(b)(1). We disagree. The letter from the SSA to the Department of Corrections seeking information on Strong's disability claim regarding "mental, pedophilia" is sufficient indication of relevancy.

IV
Williams contends that the trial court did not abuse its discretion in quashing the State's video deposition. First, Williams argues that under CR 26(b) and (c), the trial court may properly limit discovery in order to protect a person's privacy or to prevent annoyance, embarrassment, oppression or undue burden or expense.[37] Williams argues that because he had already submitted to four days of interviewing and testing by a state psychologist, a video deposition was unwarranted. He further cites cases regarding "apex depositions" in which the trial court abused its discretion in permitting depositions of high level executives where there was no showing that they had unique knowledge or that less intrusive means of obtaining the information had been attempted.[38] Noting that CR 30(a) requires that a deposition of a person "confined in prison may be taken only by leave of court on such terms as the court prescribes," Williams argues that the State required the court's permission to depose him because the Special Commitment Center (SCC) is located within the confines of a prison. Finally, Williams makes essentially the same argument that he employed with respect to the CR 35 issue in asserting that the State is not entitled to discovery outside of that provided by RCW 71.09.
We conclude that the trial court erred in quashing the State's deposition of Williams. "It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error."[39] Here, there were no extraordinary circumstances barring a deposition. Furthermore, Williams has no absolute privilege to avoid a deposition, such as a blanket Fifth Amendment right to remain silent, rooted in a claim that RCW 71.09 is punitive as applied.[40] Williams' "truncated" privacy interests are insufficient to bar deposition.
Moreover, Williams' reliance on Howell v. Spokane & Inland Empire Blood Bank is misplaced. In Howell, the Washington Supreme Court affirmed a trial court order conditioning the deposition of a non-party. The case provides no support for preventing the deposition entirely. The "apex deposition" cases are even less relevant here. Unlike the CEO in a tort suit who has no specialized knowledge, a sex offender has direct and personal information central to the State's case. Finally, it is well established that commitment at the SCC is civil, not criminal. That the SCC has some associations with the Department of Corrections does not render the SCC a "prison". Thus, CR 30(a) does not apply. Instead, CR *293 30(b)(8)(A) allows any party to videotape the deposition of a party without leave of court provided that written notice is given at last 20 days in advance. The State complied with this requirement. And as discussed above, discovery is not limited to that specifically defined in RCW 71.09.
Lastly, at oral argument Williams contended that the State's appeal is moot because the trial for a sexually violent predator proceeding must be scheduled within 45 days from the filing of the petition. Because the State did not seek or obtain an order staying the proceeding during the pendency of this appeal, it is now too late to set a trial date.[41] A commissioner of this court previously rejected this argument, holding that the 45-day period did not continue to run and therefore did not expire while the State's appeal was pending. In so holding, the commissioner noted that "[i]t is axiomatic that upon granting discretionary review, no trial shall proceed in superior court because the trial court has no authority to engage in such a trial. RAP 7.2(a). In this setting there was no need for a stay of the 45 day trial period."[42] The motion to modify the commissioner's ruling is denied. We agree with and adopt the commissioner's analysis.
We conclude that normal discovery under the civil rules is permitted in RCW 71.09 cases. The State is entitled to obtain an additional mental health evaluation pursuant to CR 35 where, as here, it makes an affirmative showing of good cause. Therefore, we affirm in Strong's case, and reverse in Williams' case on this issue. We affirm the trial court's finding that there is no privilege preventing the State from discovering Strong's Social Security records in the possession of his attorney. We reverse the trial court's order quashing video deposition of Williams.
AGID, C.J., and WEBSTER, J., concur.
NOTES
[1] 139 Wash.2d 379, 986 P.2d 790 (1999), cert. denied, ___ U.S. ___, 121 S.Ct. 880, 148 L.Ed.2d 789 (2001).
[2] 139 Wash.2d 341, 986 P.2d 771 (1999), cert. denied, ___ U.S. ___, 121 S.Ct. 880, 148 L.Ed.2d 789 (2001).
[3] Howell v. Spokane & Inland Empire Blood Bank, 117 Wash.2d 619, 629, 818 P.2d 1056 (1991).
[4] Barfield v. City of Seattle, 100 Wash.2d 878, 887, 676 P.2d 438 (1984).
[5] 77 Wash.App. 596, 892 P.2d 1091 (1995).
[6] 93 Wash.App. 852, 957 P.2d 281 (1998).
[7] Aguilar was decided under a previous version of the statute, which is substantially similar to the relevant portion of the current statute.
[8] CR 35(a) provides that an order to submit to a physical or mental examination must be made on a motion for good cause shown, and the person to be examined must receive notice.
[9] CR 81 provides that: "(a) Except where inconsistent with rules or statutes applicable to special proceedings, these rules shall govern all civil proceedings. Where statutes relating to special proceedings provide for procedure under former statutes applicable generally to civil actions, the procedure shall be governed by these rules. (b) Subject to the provisions of section (a) of this rule, these rules supercede all procedural statutes and other rules that may be in conflict."
[10] Aguilar, 77 Wash.App. at 600, 892 P.2d 1091.
[11] Broer, 93 Wash.App. at 864, 957 P.2d 281.
[12] RCW 71.09.040(4) provides in relevant part that: "If the probable cause determination is made, the judge shall direct that the person be transferred to an appropriate facility for an evaluation as to whether the person is a sexually violent predator."
[13] E.g., In re Detention of Henrickson, 92 Wash. App. 856, 865, 965 P.2d 1126 (1998) (applying CR 26(b)(5)(C)); In re Detention of Aqui, 84 Wash.App. 88, 100, 929 P.2d 436 (1996) (applying CR 26(b)(5)(B)).
[14] 77 Cal.App.4th 422, 91 Cal.Rptr.2d 752 (2000).
[15] Sporich, 91 Cal.Rptr.2d at 755-56.
[16] Sporich, 91 Cal.Rptr.2d at 755.
[17] 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964).
[18] Schlagenhauf, 379 U.S. at 114, 85 S.Ct. 234.
[19] Schlagenhauf, 379 U.S. at 118, 85 S.Ct. 234.
[20] 14 Wash.App. 939, 546 P.2d 1230 (1976).
[21] Green, 14 Wash.App. at 943, 546 P.2d 1230.
[22] At oral argument, the State suggested that the total number of examinations could be minimized by allowing the State's expert to evaluate the defendant at the same time that the Department of Social and Health Services interviewer is conducting the RCW 71.09.040(4) examination. We decline to require such an arrangement as a matter of course.
[23] RCW 71.09.050.
[24] Campbell, 139 Wash.2d at 356, 986 P.2d 771.
[25] 5 U.S.C.A. § 552.
[26] 5 U.S.C.A. § 552a.
[27] 42 U.S.C.A. § 1300 et seq.
[28] 809 F.2d 885 (D.C.Cir.1987).
[29] Laxalt, 809 F.2d at 888-89.
[30] Sorenson v. City of Bellingham, 80 Wash.2d 547, 558, 496 P.2d 512 (1972).
[31] Sorenson, 80 Wash.2d at 558, 496 P.2d 512 (holding that an appellate court will generally dismiss an appeal if the issues presented are moot).
[32] CR 26(b)(4) states that: "Subject to the provisions of subsection (b)(5) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subsection (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."
[33] Lewis H. Orland, Observations on the Work Product Rule, 29 Gonz. L.Rev. 281 at 283 (1993-94).
[34] Limstrom v. Ladenburg, 136 Wash.2d 595, 606, 963 P.2d 869 (1998).
[35] CR 26(b)(4).
[36] Dever v. Fowler, 63 Wash.App. 35, 48, 816 P.2d 1237 (1991).
[37] Howell v. Spokane & Inland Empire Blood Bank, 117 Wash.2d 619, 629, 818 P.2d 1056 (1991).
[38] See, e.g., In re Alcatel U.S.A., Inc., 11 S.W.3d 173, 175-76 (Tex.2000).
[39] Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir.1979). Apparently, Washington courts have not addressed the circumstances under which it is appropriate to quash a deposition, but federal courts have addressed the matter under the federal rules. When a state civil rule follows the federal rule, decisions interpreting the federal rule are persuasive authority. State v. Land, 121 Wash.2d 494, 497-99, 851 P.2d 678 (1993).
[40] Turay, 139 Wash.2d at 422, 986 P.2d 790; Campbell, 139 Wash.2d at 350, 986 P.2d 771; see also Seling v. Young, 531 U.S. 250, ___, 121 S.Ct. 727, 735, 148 L.Ed.2d 734 (2001).
[41] This case was set for a hearing on the merits soon after Williams filed his motion to modify the commissioner's ruling, and accordingly it was referred to us for consideration.
[42] State v. Strong and State v. E.L.W., No. 45761-6-I (consolidated with 46422-1-I), Commissioner's Ruling Denying Emergency Motion to Dismiss or Remand to Trial Court at p. 3.