[No. 77576-1. En Banc.]
Argued June 6, 2006. Decided November 30, 2006.

*In the Matter of the Detention of* DANIEL AUDETT.

THE STATE OF WASHINGTON, *Petitioner*, v. DANIEL AUDETT, *Respondent*.

*Norm Maleng, Prosecuting Attorney*, and *Brooke E. Burbank* and *David J.W. Hackett, Deputies*, for petitioner.

*Nancy P. Collins* (of *Washington Appellate Project*), for respondent.

¶1 MADSEN, J. — The Court of Appeals reversed Daniel Audett's commitment as a sexually violent predator and remanded for new commitment proceedings based on this court's decision in *In re Detention of Williams*, 147 Wn.2d 476, 55 P.3d 597 (2002), published after Audett's trial, holding that chapter 71.09 RCW precludes the trial court from ordering a CR 35 exam in a sexually violent predator proceeding. The State contends that the Court of Appeals erred in applying *Williams* in this case and that it was within the trial court's discretion to order a mental exam pursuant to CR 35. We hold that *Williams* does apply in this case and that the trial court improperly ordered a CR 35 exam. However, we also hold that the Court of Appeals erred in reversing Audett's commitment because Audett did not object to admission of evidence derived from the mental exam. Further, we hold that sufficient evidence supports the jury's verdict that Audett is a sexually violent predator.

## FACTS

¶2 On November 2, 2000, shortly before Mr. Audett was to be released from prison, the State filed a petition to have Audett committed as a sexually violent predator pursuant to chapter 71.09 RCW. Audett has a history of sex offenses. At the time the petition was filed, Audett was incarcerated for committing two counts of attempted kidnapping in the first degree with sexual motivation that occurred in 1992. These offenses are sexually violent offenses as defined in

former RCW 71.09.020(6) (1995).[1] At the time he committed the offenses, Audett was on parole for two prior sex offenses he committed against young girls in Alaska.[2]

¶3 After the trial court determined that probable cause existed to believe that Audett is a sexually violent predator pursuant to RCW 71.09.040, a four week trial was held pursuant to RCW 71.09.050. In May 2002, a jury unanimously found that Audett is a sexually violent predator.[3]

¶4 Prior to trial, Dr. Linda Thomas, a licensed psychologist, examined Audett pursuant to RCW 71.09.040(4). The State then moved pursuant to CR 35 for another expert, Dr. Leslie Rawlings, a licensed clinical psychologist and a certified sex offender treatment provider, to examine Audett.[4] Audett resisted this exam, claiming, among other theories, that a second mental examination was not authorized under chapter 71.09 RCW. The trial court granted the State's motion and Dr. Rawlings examined Audett.

¶5 Shortly before the trial, Audett made a motion in limine to exclude Dr. Thomas's testimony under ER 403.[5]

---

[1] Three months before these offenses, Audett completed an outpatient sexual deviancy treatment program, a condition of his parole.

[2] After he completed his prison sentence in Alaska, he moved to Washington and, pursuant to the Interstate Compact Agreement, was under supervision by the Washington Department of Corrections.

[3] In addition to the offenses discussed above, Audett was also convicted in 1981 for genital exposure to an adult woman, a stranger, in Snohomish County and numerous (four) driving while under the influence offenses. *See, e.g.*, Clerk's Papers at 3-4; 4 Videotape Proceedings (VP) at 600-02. Numerous experts (including Audett's own expert) have opined that Audett's consumption of alcohol contributes to his sexually violent behavior. *See, e.g.*, 9 VP at 1514-16.

[4] CR 35 provides:

(a) **Examination.**

(1) *Order for Examination.* When the mental or physical condition (including the blood group) of a party . . . is in controversy, the court in which the action is pending may order the party to submit to a physical examination by a physician, or mental examination by a physician or psychologist . . . . The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

[5] ER 403, entitled, "Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time," provides:

Clerk's Papers (CP) at 458-59. Audett's counsel asserted that "the testimony of Dr. Thomas is cumulative. It wastes the Court's time. She has nothing . . . to add that Dr. Rawlings isn't going to be testifying to." 1 Videotape Proceedings (VP) at 133-36; CP at 459. The trial court granted Audett's motion.

¶6 At trial, Audett did not object to the admission of Dr. Rawlings's reports or his testimony. Prior to Dr. Rawlings's examination of Audett, Dr. Rawlings had done a complete review of Audett's medical and criminal records and had submitted a report for the probable cause hearing. In his report, Dr. Rawlings concluded that Audett is a sexually violent predator, finding that Audett met the diagnostic criteria for pedophilia. Dr. Rawlings also opined that Audett met the diagnostic criteria for "personality disorder[s] not otherwise specified with anti-social features." CP at 7.[6] Dr. Rawlings concluded that Audett presents a high risk to reoffend and is more likely than not to reoffend in a sexually violent manner if not confined to a secure facility.

¶7 After deliberations, the jury returned a unanimous verdict, finding that Audett is a sexually violent predator. Audett appealed, first arguing that there was not sufficient

---

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, *waste of time, or needless presentation of cumulative evidence.*

(Emphasis added.)

Prior to trial, the State provided its list of witnesses, which included Dr. Thomas and Dr. Rawlings, to Audett.

[6] Additionally, Dr. Rawlings provided that "Audett's sexual attraction to children is paraphilic in that it involves intense, recurrent urges, fantasies or behaviors involving sexual contact with children." CP at 7-8. Dr. Rawlings employed a number of actuarial instruments including the "SORAG [Sex Offender Risk Appraisal Guide], the VRAG [Violence Risk Appraisal Guide], the MnSOST-R [Minnesota Sex Offender Screening Tool—Revised], and the Static 99," which identified Audett's likelihood of reoffending in the future at greater than 50 percent over various time frames. CP at 8. During the trial, Dr. Rawlings testified in great detail as to the various instruments, their strengths and weaknesses, and Audett's scores on each of them. *See, e.g.*, 4 VP at 665-703.

evidence supporting the jury's verdict. In his reply brief in the Court of Appeals, he argued for the first time that the trial court's order requiring Audett to participate in a mental evaluation pursuant to CR 35 contravened this court's holding in *Williams*, requiring a reversal of Audett's civil commitment order. The Court of Appeals agreed, and in an unpublished decision reversed the commitment order, remanding for a new trial. *In re Det. of Audett*, noted at 127 Wn. App. 1051, 2005 Wash. App. LEXIS 1320. The State petitioned for review.

## ANALYSIS

¶8 Under RCW 71.09.040(4), after a judge determines that probable cause exists to believe that a person is a sexually violent predator, the judge is required to direct "that the person be transferred to an appropriate facility for an evaluation as to whether the person is a sexually violent predator." The evaluation is required to be conducted "by a person deemed to be professionally qualified to conduct such an examination pursuant to rules developed by the department of social and health services." *Id.* In adopting such rules, the Department of Social and Health Services is required to consult with the Department of Health and the Department of Corrections. *Id.* In civil commitment proceedings, after the trial, assuming a jury (or judge, if a jury trial is waived) finds that a person is a sexually violent predator, additional mental evaluations are required at least annually following commitment. RCW 71.09.070 ("[e]ach person committed under this chapter shall have a current examination of his or her mental condition made by the department of social and health services at least once every year" and the report must be "prepared by a professionally qualified person"). Additionally, the committed person may retain or, if he or she is indigent and so requests, the court may appoint a qualified expert or professional person to examine him or her. *Id.*

¶9 Given the express provisions for various mental examinations occurring both prior to and after trial, in

*Williams* we concluded that additional mental examinations prior to trial that were not provided for in the statute were inconsistent with the statutory scheme. *Williams*, 147 Wn.2d at 491. Thus, we held that "the rules of statutory construction require a finding that the State is not entitled to a CR 35 mental examination." *Id.* at 479.

¶10 The State argues that the Court of Appeals erred in applying our holding in *Williams* in this case. The State argues that *Williams* set forth a new rule of law, which this court should apply prospectively. The State points to two cases to guide our prospectivity analysis. However, the case law the State cites is not on point. As Audett correctly observes, the two cases on which the State primarily relies have been reversed by this court and do not address the analysis required when a court announces a new rule. *See State v. Darden*, 30 Wn. App. 460, 635 P.2d 760 (1981) (explaining that the court's decision in *State v. Edwards*, 94 Wn.2d 208, 616 P.2d 620 (1980) was not a new criminal rule of procedure, it merely construed the meaning of former JCrR (justice court rule) 2.03, dealing with speedy trials, and hence prospective application only is not required), *rev'd*, 99 Wn.2d 675, 663 P.2d 1352 (1983); *State v. Kray*, 31 Wn. App. 388, 641 P.2d 1210 (1982) (*overruled by Darden*) (same), *remanded*, 100 Wn.2d 1020, 670 P.2d 662 (1983). Moreover, both of these cases involve criminal proceedings, not civil.

¶11 Audett argues that *Williams* must be applied to his case because, when an appellate court construes a statute, its construction is deemed to relate back to the promulgation of the statute and points to cases that so hold. *E.g.*, *State v. Moen*, 129 Wn.2d 535, 538, 919 P.2d 69 (1996) (the rule established by this court is that where a statute has been construed by the highest court of the state, the court's construction is deemed to be what the statute has meant since its enactment; in other words, there is no question of retroactivity); *Johnson v. Morris*, 87 Wn.2d 922, 927-28, 557 P.2d 1299 (1976) (same) (discussing the effect of a court's statutory construction of a statute and a later amendment

of the statute by the legislature). Thus, Audett claims, there is no question of retroactivity, and the Court of Appeals did not err in applying *Williams* and reversing his commitment.

 ¶12 As a general matter, Audett is correct. However, in *Williams* we did not merely construe a statute. Rather, as the State points out, *Williams* required the court to harmonize and explain the interaction between state law, chapter 71.09 RCW (procedures and purposes involved in civil commitment proceedings), and court rules, CR 35 (allowing for mental and physical examinations during discovery), and CR 81 (providing that "[e]xcept where inconsistent with rules or statutes applicable to special proceedings, these [court] rules shall govern all civil proceedings"). Additionally, this court overturned *In re Detention of Williams*, 106 Wn. App. 85, 22 P.3d 283, *rev'd in part, aff'd in part*, 147 Wn.2d 476, 55 P.3d 597 (2002), a prior binding decision by the Court of Appeals.[7] We agree with the State that in *Williams*, this court set forth a new rule of law, and whether to apply the rule retroactively requires further analysis.

¶13 Instructive in this case is the analysis set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S. Ct. 349, 30 L. Ed. 2d 296 (1971). As the United States Supreme Court has explained, a change in the law, particularly where a court expressly overrules a precedent upon which the case would otherwise be decided differently, gives rise to issues of retroactivity. Since the question is whether the court should apply the old rule or the new one, the United States Supreme Court has described retroactivity as a matter of choice of law: "A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward." *Great N. Ry. v. Sunburst Oil & Ref. Co.*, 287 U.S. 358, 364, 53 S. Ct. 145, 77 L. Ed. 360 (1932).

---

[7] Shortly before the State made its motion for the CR 35 exam, the Court of Appeals published *Williams*, holding that chapter 71.09 RCW did not prevent the State from requesting an additional mental exam pursuant to CR 35.

¶14 Although a new rule of law announced in a civil case is usually applied retroactively, in *Chevron Oil* the United States Supreme Court has suggested three factors to consider to determine whether a case should be given prospective application or selective prospectivity: (1) the decision to be applied prospectively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retroactive operation will further or retard its operation; and (3) weigh the inequity imposed by retroactive application. *Chevron Oil*, 404 U.S. at 99. *See also Franks & Son, Inc. v. State*, 136 Wn.2d 737, 765-66, 966 P.2d 1232 (1998) (dissent by Sanders, J., discussing *Chevron Oil*). With regard to the third factor, the Court explained, " 'where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.' " *Chevron Oil*, 404 U.S. at 107 (quoting *Cipriano v. City of Houma*, 395 U.S. 701, 706, 89 S. Ct. 1897, 23 L. Ed. 2d 647 (1969)).

¶15 Overall, the factors do not support limiting the application of *Williams*. Although this court reversed a lower court appellate case upon which the State relied, providing some support under the first factor for limiting the application of *Williams*, language in CR 81 regarding application of the civil rules where special proceedings govern the action provided guidance for determining whether to apply CR 35 in the context of a sexual predator proceeding. Additionally, counsel in this case, and other cases, had been raising objections to CR 35 examinations prior to the Court of Appeals decision in *Williams*, based on the straightforward language of the sexually violent predator statutes and the court rules.

¶16 As to the remaining two *Chevron Oil* factors, these do not clearly indicate that *Williams* should be limited. In

*Williams*, we explained that the legislature did not intend for additional exams of a respondent, separate from the many exams expressly required. Although the overall purpose of chapter 71.09 RCW is to identify sexually violent predators and to make sure such persons receive treatment, the procedures for doing so have been set forth by the legislature with specificity. Indeed, the legislature has identified particular qualifications that an evaluator must possess in order to perform the evaluation. And, as to CR 35 examinations, although generally within the trial court's discretion to order, such exams are restricted by good cause, a difficult showing to make in light of the evaluations provided for by chapter 71.09 RCW. These considerations suggest that retroactively applying *Williams* will further the purpose of the statute and the court rule. Finally, retroactive application of *Williams* will not necessarily result in expensive and duplicative proceedings of a new trial. As explained below, this court in *Williams* did *not* decide what would happen in the event a respondent had, in fact, had an additional exam. Thus, while the first factor in *Chevron Oil* provides some support for limiting the application of *Williams*, the last two do not clearly support nonretroactivity. *See Beavers v. Johnson Controls World Servs., Inc.*, 118 N.M. 391, 881 P.2d 1376 (1994) (adopting presumption of retroactivity for a new rule imposed by a judicial decision in a civil case; holding presumption may be overcome by a sufficiently weighty combination of one or more of the *Chevron Oil* factors). Accordingly, we hold *Williams* applies in this case.

¶17 The State argues, though, that the trial court did not abuse its discretion when ordering the additional mental examination under CR 35 during discovery because its decision was not "manifestly unreasonable or based on untenable grounds." State's Suppl. Br. (revised) at 15 (citing, among others, *In re Det. of Halgren*, 156 Wn.2d 795, 807, ¶ 22, 132 P.3d 714 (2006) (discovery orders are re-

viewed for abuse of discretion);[8] *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971) (a trial court abuses its discretion only when its decision is manifestly unreasonable or based on untenable grounds)). The State points out that at the time the trial court ordered the CR 35 exam, the Court of Appeals had published *Williams*, 106 Wn. App. 85 (holding that a trial court is permitted to order CR 35 exams prior to trial in civil commitment proceedings). That case was not reversed in part by this court until approximately five months after Audett's trial. However, even if the State is correct that the trial court's order was not unreasonable and the trial court was entitled to rely on *Williams*, a valid and binding opinion by the Court of Appeals, because we apply our decision overruling that opinion retroactively, we hold the trial court had no authority to order a CR 35 exam.

¶18 Although we agree with Audett that *Williams* applies retroactively, and that the trial court erred in ordering an additional examination under CR 35, we do not agree with Audett's contention that *Williams* mandates exclusion of evidence derived from the CR 35 exam. In *Williams* all three respondents had refused to participate in an additional examination; therefore, this court's decision merely allowed the respondents to avoid an additional exam. We did not consider what relief might be available in the event that such an evaluation should take place or, as in this case, when the results of a CR 35 evaluation are admitted in a sexually violent predator proceeding. Thus, we did not decide whether the remedy for a violation of CR 35, in the context of a sexually violent predator proceeding, is exclusion of evidence.

¶19 The State argues that this court should not reach the issue of remedy because Audett did not object to the admission of Dr. Rawlings testimony at trial. By failing

---

[8] Although the respondent in *Halgren* raised many of the same issues (the respondent in that case had also undergone an additional exam pursuant to CR 35), we did not reach the issues because the record did not include the trial court's order for a mental exam pursuant to CR 35. In this case, the trial court's CR 35 exam order is in the record. CP at 320.

to object at trial, the State claims, he failed to preserve the issue for appeal. The State cites *State v. Fagalde*, 85 Wn.2d 730, 731, 539 P.2d 86 (1975), for the proposition that failure to object at trial will operate as waiver of the right to assert that error on appeal. *See also State v. Guloy*, 104 Wn.2d 412, 421, 705 P.2d 1182 (1985) (a litigant cannot remain silent as to claimed error during trial and later, for the first time, urge objections thereto on appeal). The State asserts that "[t]he error preservation doctrine has real meaning in this case and Audett should not be allowed to challenge testimony that passed without objection at the trial court." State's Suppl. Br. (revised) at 4. Unless this doctrine is applied to bar Audett's current claim, the State argues, he will be allowed to take inconsistent positions on the admission of Dr. Rawlings's testimony. The State claims this is patently unfair.

¶20 The State also claims that if Audett had objected at trial, it is doubtful that the court would have excluded Dr. Thomas's testimony as cumulative. Additionally, the State points out that if the trial court had been presented with a timely objection, the trial court could have limited Dr. Rawlings's testimony to exclude reference to the interview or taken other measures to protect the records. The State also claims it could have protected the record in other ways, such as (1) calling Dr. Thomas rather than Dr. Rawlings; or (2) obtaining a declaration from Dr. Rawlings or offered testimony outside the presence of the jury on the extent to which the CR 35 examination affected his opinion, making it clear that Dr. Rawlings's opinion was not changed by the interview; or (3) both. Such actions, among others available, would have made it clearer on appellate review that Dr. Rawlings's opinion was not changed by the interview and that all the information he learned was obtained and presented to the jury by other means. Because there was not timely objection below, the State says it was never afforded an opportunity to protect the record.

¶21 Audett counters that he did preserve the error on appeal because he initially objected to the CR 35 exam

before Dr. Rawlings conducted the exam. He claims that the purpose of requiring an objection at trial is to put the court and adversarial party on notice of the contested issue and it should offer a reasonably definite statement of the claimed legal error sufficient to apprise the judge of the issue, citing *Presnell v. Safeway Stores, Inc.*, 60 Wn.2d 671, 675, 374 P.2d 939 (1962). Audett contends that absolute clarity is not required and the preservation rules are discretionary and may be waived by this court. *Id.*; RAP 1.2(a). Further objections, according to Audett, would not have altered the court's decision that the State's expert was entitled to base his testimony on a mental examination. Thus, according to Audett, such objections were not necessary to preserve the error for appeal.

¶22 Audett's argument assumes that objecting to the examination implicitly carries an objection to admissibility of evidence based on that examination. However, in this case, not only did Audett fail to object to Dr. Rawlings's testimony at trial, he relied on Dr. Rawlings's testimony as the basis for his motion to exclude Dr. Thomas's testimony, the psychologist who completed the mental examination pursuant to chapter 71.09 RCW. Audett stated both in his pretrial brief to the court and in pretrial oral argument that Dr. Thomas's testimony should be excluded because it was "cumulative" and "wastes the court's time" and that Dr. Thomas had "nothing . . . to add that Dr. Rawlings isn't going to be testifying to." 1 VP at 133-36; CP at 429-86.

¶23 Commentators have said that the policies behind the preservation of error doctrine, codified in RAP 2.5,[9] are twofold:

> Some opinions have given the impression that the practice arose out of solicitude for the sensibilities of the trial court— that the trial court should be given an opportunity to correct

---

[9] RAP 2.5(a) provides that "[t]he appellate court may refuse to review any claim of error which was not raised in the trial court." *See also* 2A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RAP 2.5(1) (6th ed. 2004) (central to RAP 2.5 is the traditional rule that an appellate court will ordinarily refuse to review issues that were not raised at the trial court level).

errors and omissions at the trial level, and that it was the obligation of the parties to draw the trial court's attention to errors, issues, and theories, or be foreclosed from relying upon them on appeal.

An even more important factor, however, is the consideration that the opposing parties should have an opportunity at trial to respond to possible claims of error, and to shape their cases to issues and theories, at the trial level, rather than facing newly-asserted errors or new theories and issues for the first time on appeal.

2A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RAP 2.5(1), at 192 (6th ed. 2004). *See also Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983).

¶24 In this case, we agree that the State has offered compelling reasons to find that Audett failed to preserve the issue of whether evidence derived from a CR 35 exam ordered in a sexually violent predator proceeding must be excluded. Additionally, we are comfortable in declining to address the remedy of excluding evidence because the trial court's error in admitting the CR 35 exam was not an error of constitutional magnitude. In *Williams*, 147 Wn.2d at 490-91, we did not preclude the use of CR 35 exams out of due process concerns. Rather, we merely held that RCW 71.09.040 provides the exclusive means for obtaining mental examinations of civil commitment respondents. We have never held that sexually violent predator civil commitment respondents have a due process right to refuse to submit to an examination of the type described in CR 35 or that such respondents have a Fifth Amendment right against self-incrimination. *See, e.g., In re Pers. Restraint of Young*, 122 Wn.2d 1, 50-51, 857 P.2d 989 (1993) (rejecting respondent's argument that he should not be required to speak to a psychologist in a mental examination; the action is not a "criminal case" for purposes of the privilege against self-incrimination); *In re Det. of Campbell*, 139 Wn.2d 341, 355-56, 986 P.2d 771 (1999) (sex offenders threaten public safety and therefore have reduced privacy interests, discussing disclosure of personal information). In fact, RCW

71.09.040(4) specifically provides that such respondents must submit to an evaluation after a court determines that there is probable cause to believe they are sexually violent predators, and RCW 71.09.070 provides that they must submit to subsequent examinations annually after having been committed.

¶25 Finally, because the Court of Appeals resolved this case on other grounds, we consider Audett's argument that there was insufficient evidence to support the jury's verdict that he is a sexually violent predator. *See* RAP 13.7(b). He claims that the evidence produced at his trial was insufficient to prove beyond a reasonable doubt that his mental condition made him " '[l]ikely to engage in predatory acts of sexual violence if not confined in a secure facility' " under RCW 71.09.020(7).

¶26 In order to uphold a commitment, a court must find that the jury had sufficient evidence to find the following elements:

(1) That the respondent had been convicted of or charged with a crime of sexual violence; and

(2) That the respondent suffers from a mental abnormality or personality disorder; and

(3) That such mental abnormality or personality disorder makes the respondent likely to engage in predatory acts of sexual violence if not confined in a secure facility.

*In re Det. of Thorell*, 149 Wn.2d 724, 758-59, 72 P.3d 708 (2003).[10] In a sufficiency challenge, the evidence is viewed in the light most favorable to the State, *id.* at 744, and all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the respondent. *See, e.g.*, *State v. Myles*, 127 Wn.2d 807, 816, 903 P.2d 979 (1995); *State v. Joy*, 121 Wn.2d 333, 339, 851 P.2d 654 (1993) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). The commitment will be upheld

---

[10] Although the commitment proceedings are civil in nature, given the standard of proof, the sufficiency of evidence is examined under the standard of beyond a reasonable doubt. *Thorell*, 149 Wn.2d at 744.

if any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Myles*, 127 Wn.2d at 816; *Joy*, 121 Wn.2d at 338.

¶27 Audett does not dispute that he was convicted of a crime of sexual violence or that he suffers from a mental abnormality or personality disorder (both his expert and the State's expert testified that he had "pedophilia," a diagnosis that meets the criteria of a mental abnormality or personality disorder). *See, e.g.*, 4 VP at 578, 583. Thus, only the third element is at issue. While this third element does not require a separate finding, it must be supported by proof beyond a reasonable doubt of "serious difficulty controlling . . . behavior." *Thorell*, 149 Wn.2d at 745 (discussing *Kansas v. Crane*, 534 U.S. 407, 122 S. Ct. 867, 151 L. Ed. 2d 856 (2002)). Although "a diagnosis of a mental abnormality or personality disorder is not, in itself, sufficient evidence for a jury to find a serious lack of control," such a diagnosis "when coupled with evidence of prior sexually violent behavior and testimony from mental health experts, which links these to a serious lack of control, is sufficient for a jury to find that the person presents a serious risk of future sexual violence and therefore meets the requirements of [a sexually violent predator]." *Thorell*, 149 Wn.2d at 761-62.

¶28 Taking these facts in the light most favorable to the State, there was sufficient evidence presented at trial for the jury to find, beyond a reasonable doubt, that Audett was unable to control his urge to molest young girls. The State presented extensive evidence documenting and demonstrating that Audett had serious difficulty controlling his behavior. Audett has a history of escalating behavior, beginning with exposure of his genitals to adult women, escalating to molestations, including digital penetration and oral sex, of young girls, related to and known to him, and finally to attempted kidnapping and molestation of young girls who were strangers to him. Moreover, a few months before Audett attempted to kidnap and molest the two young girls outside a restaurant, Audett had *completed* an outpatient sexual treatment program.

¶29 Both experts testified to and agreed that Audett is properly diagnosed with "pedophilia," a mental abnormality or personality disorder within the meaning of chapter 71.09 RCW. Additionally, both experts testified that Audett's inability to control his alcoholism was a significant additional factor contributing to his risk of reoffense, as was his lack of knowledge regarding his offending patterns. *See, e.g.*, 4 VP at 612-20. Audett's own expert testified that Audett admitted that he has "no understanding of how or why he acts impulsively." 9 VP at 1567. Based on numerous actuarial studies and his comprehensive review of the record and his clinical evaluation, the State's expert testified that, in his professional opinion, Audett was more likely than not to sexually reoffend if not confined to a secure facility. 4 VP at 668. Given the comprehensive record and taking the evidence in the light most favorable to the State, we conclude that there is sufficient evidence to support the commitment.

¶30 We reverse the Court of Appeals and affirm Audett's commitment as a sexually violent predator.[11]

## CONCLUSION

¶31 We hold that our decision in *Williams* applies retroactively and that the trial court did not have discretion to order a mental exam pursuant to CR 35. However, we also hold that Mr. Audett failed to preserve his objection to the admission of the exam results or the State's expert's testimony, derived in part from that exam. Finally, we hold that there was sufficient evidence supporting Audett's commitment as a sexually violent predator.

ALEXANDER, C.J., and C. JOHNSON, BRIDGE, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

---

[11] Because we uphold Audett's commitment, we need not reach the State's remaining arguments.

¶32 SANDERS, J. (dissenting) — In *In re Detention of Williams*, 147 Wn.2d 476, 55 P.3d 597 (2002), we held a CR 35 exam is inconsistent with sexually violent predator proceedings, and the majority now holds *Williams* applies retroactively to Daniel Audett's hearing and "the trial court improperly ordered a CR 35 exam." Majority at 715. However the majority refuses to exclude Rawlings's testimony because it claims Audett failed to preserve the error. Majority at 724-25. I disagree. Daniel Audett timely objected to his CR 35 exam and deserves a meaningful remedy. By leaving the trial court's error uncorrected, the majority renders *Williams* meaningless.

I. The trial court's error was preserved

¶33 Audett's objection to the CR 35 exam preserved the trial court's error. The remedy is exclusion of any testimony resulting from the exam. Furthermore, Audett did not need to reraise an already overruled objection simply because Dr. Rawlings testified. Any objection must "(1) allow opportunity for the trial court to correct the asserted error, and (2) put all parties on notice of the contended issue." *State v. McCorkle*, 137 Wn.2d 490, 498, 973 P.2d 461 (1999) (Talmadge, J., concurring). Audett's objection to the CR 35 exam was clear enough to preserve the error.

II. A remedy must be provided since the trial court acted improperly

¶34 Even if satisfied with Audett's objection, it is unclear whether the majority would reverse had Audett objected specifically to the testimony in addition to the examination itself. *See* majority at 723 ("[W]e do not agree with Audett's contention that *Williams* mandates exclusion of evidence derived from the CR 35 exam."). The majority is "comfortable" not excluding the evidence because "the trial court's error in admitting the CR 35 exam was not an error of constitutional magnitude." Majority at 726. And what rule provides nonconstitutional errors have no remedy? The

majority improperly surrenders its constitutional duty to "protect and maintain individual rights." CONST. art. I, § 1.

¶35 I dissent.