# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Detention of: | No. 57469-1-II |
| ROBERT A. HOWELL, | |
| Appellant. | UNPUBLISHED OPINION |

LEE, P.J. — Robert A. Howell appeals the trial court's order authorizing his commitment as a sexually violent predator (SVP) pursuant to chapter 71.09 RCW. He argues that the evidence was insufficient to prove, beyond a reasonable doubt, that he was more likely than not to commit second degree child molestation if released from confinement. Because there was sufficient evidence from which a rational trier of fact could conclude Howell met the statutory definition of an SVP, we affirm the commitment order.

## FACTS

In 2016, Howell pleaded guilty to one count of kidnapping in the second degree pursuant to *In re Barr*,[1] and one count of rape in the third degree. On December 15, 2021, prior to Howell's release, the State filed a petition "seeking the involuntary civil commitment of [Howell] as a sexually violent predator." Clerk's Papers (CP) at 1.

A jury trial on the State's petition commenced on October 12, 2022. At trial, the State presented evidence of Howell's adjudicated and unadjudicated sexual misconduct with young girls.

---

[1] 102 Wn.2d 265, 269-70, 684 P.2d 712 (1984).

No. 57469-1-II

A.      EVIDENCE AT TRIAL

        1.      Second Degree Child Molestation Conviction and Howell's Subsequent Letters

In 1996, Howell molested A.P., a 12 year old girl.  The jury heard testimony from former Officer Ronald Clark, who investigated the incident in 1996.  Officer Clark testified that Howell told him Howell had been in the woods with two girls, and had "kissed" and maybe penetrated one of them.  1 Verbatim Rep. of Proc. (VRP) (Oct. 17, 2022) at 486.  Officer Clark also testified that when he found Howell, Howell had a jug of juice and alcohol with him.

The trial court admitted into evidence two letters that Howell wrote to the sentencing judge in 1996 and 1997.  In the first letter, Howell wrote he was "ashamed" of himself, and asked the judge to give him the death penalty because he had been given "a chance to get help and hopefull[y] get cured of [his] problem" but had "messed up" and lied during his presentence evaluation.  Ex. 28, at 86.[2]

In the second letter, Howell wrote, "I [d]on't go hunting for younger girls [l]ike an addict so I know I'm [n]ot in deep enough to where I can't turn around" and "I need and want help before it gets worse and I become a h[a]bitual [p]redator."  Ex. 29, at 87.  He also told the judge that he was "scared of . . . what [would] happen when [he] [got] out [of prison]," and reiterated his request for the death penalty.  Ex. 29, at 87.  Howell also provided new details regarding earlier, unadjudicated interactions with young girls.  He wrote that he "had gone out with younger girls in the past," including a 12 year old and a 13 year old when he was 23.  Ex. 29, at 87.

---

[2] The exhibits contained in the record do not have page numbers.  For the purpose of our opinion, we number the exhibits 1-90 starting from the first page of the exhibits document.

## 2. Communicating with a Minor for Immoral Purposes Conviction

The State presented evidence regarding Howell's 2002 conviction on one count of communicating with a minor for immoral purposes. The charging document stated that Howell asked the victim, K.E.S., to have sex with him. The victim was 12 years old at the time.

The officer that responded to the incident, Richard Byrd, testified that Howell admitted to him that he had been in a trailer with the victim, sat next to the victim, and that there was porn on the television as he did so. Officer Byrd also recounted that Howell "had been drinking" and appeared intoxicated. 1 VRP (Oct. 13, 2022) at 461. Howell did not "acknowledge . . . saying anything inappropriate" to K.E.S., but "accept[ed] the [plea] deal on the best of [his] judgement [sic]." Ex. 13, at 28.

## 3. Kidnapping in the Second Degree and Rape in the Third Degree Convictions

The State presented evidence regarding Howell's 2015 conviction on one count of second degree kidnapping and one count of third degree rape. The victim from that case, T.D., also testified, recounting what happened to her. T.D. was 27, 28, or 29 years old when the crimes occurred.

The trial court admitted into evidence two letters that Howell wrote to prosecutors after initially being charged. In the first letter, Howell asked to be civilly committed because "we both know I'm going there anyway." Ex. 59, at 89. In the second letter, Howell wrote, "I need help cuz I'm obviously not getting things right to fit into society." Ex. 60, at 90.

## 4. Expert Testimony

The State and Howell presented expert testimony from Dr. Craig Teofilo and Dr. Brian Abbott, respectively.

a.     Dr. Teofilo's testimony

Dr. Teofilo testified that he diagnosed Howell with antisocial personality disorder (ASPD) and severe "alcohol use disorder in full remission in a controlled environment."[3] 1 VRP (Oct. 13, 2022) at 323. In his opinion, Howell's ASPD "qualifies as a personality disorder as defined by the SVP statutes." 1 VRP (Oct. 13, 2022) at 356.

Dr. Teofilo opined that Howell's ASPD "causes him serious difficulty in controlling his sexually violent behavior." 1 VRP at 366. Dr. Teofilo's opinion that Howell would have "serious difficulty in controlling his sexually violent behavior" was based on seven data points. 1 VRP (Oct. 13, 2022) at 367. The first data point was Howell's history of continuing to commit sex crimes despite sanctions. The second data point was Howell's history of committing sex crimes "despite being on community supervision." 1 VRP (Oct. 13, 2022) at 367. In explaining the second data point, Dr. Teofilo noted that Howell's "1996, 2002 and 2015 sex offenses all occurred while he was on community supervision." 1 VRP (Oct. 13, 2022) at 367-68. The third data point was Howell's own "predict[ion] that he would reoffend," as evidenced by the letters he wrote following his child molestation conviction. 1 VRP (Oct. 13, 2022) at 368. The fourth data point was Howell's history of "sexual misbehaviors" while on community custody, including parole violations for possessing pornography and contacting minors. 1 VRP (Oct. 13, 2022) at 368. The fifth data point was Howell's history of "sexual misbehaviors that occurred while he was in a

---

[3] Dr. Teofilo testified that Howell's alcohol use disorder might "facilitate [Howell's] offending" but would not itself "predispose[] him to committing sex offenses." 1 VRP (Oct. 13, 2022) at 372. While "there's no evidence that [Howell] currently . . . is suffering the throws of the substance use disorder[,] . . . it may be that it's the controlled environment [that] is . . . the issue." 1 VRP (Oct. 13, 2022) at 357-58.

custodial setting," including masturbating in front of DOC staff members and writing "sexual letters" to other inmates. 1 VRP (Oct. 13, 2022) at 342, 369. The sixth data point was Howell's "seven unadjudicated [incidents with] girls ages 12 to 15 starting when he was 18." 1 VRP (Oct. 13, 2022) at 369. Finally, the seventh data point was Howell's 2016 request to prosecutors that he be civilly committed because he needed help.

Dr. Teofilo also relied on "three actuarial instruments" in forming his opinion. 1 VRP (Oct. 13, 2022) at 375. Based on these actuarial instruments, Dr. Teofilo projected expected rates of recidivism at "5, 10 and 20 year[s]" from release. 1 VRP (Oct. 13, 2022) at 442. The "5 year rate was 46.5%, 10 years was 59.3%, and the 20 year lifetime rate was 69.6%," meaning "individuals with scores [similar to Howell's] have reoffended at" the noted rates. 1 VRP (Oct. 13, 2022) at 398, 444.

Dr. Teofilo testified that Howell's ASPD meant Howell would "more likely than not . . . commit a future crime of predatory sexual violence if not confined in a secured facility." 1 VRP (Oct. 13, 2022) at 405. When asked about the term "acts of sexual violence," Dr. Teofilo explained that it was his understanding that the meaning of the term depended on the enumerated crimes in the SVP statute. Dr. Teofilo's opinion that "a future offense would likely be sexually violent in nature" was based on Howell's history and his rape and child molestation convictions. 1 VRP (Oct. 13, 2022) at 404.

        b.       Dr. Abbott's testimony

Dr. Abbott also diagnosed Howell with ASPD. Dr. Abbott did not diagnose Howell with alcohol abuse disorder, but noted that Howell "either had it by history . . . or possibly it was in sustained remission in a controlled environment." 1 VRP (Oct. 12, 2022) at 229.

Dr. Abbott testified that, in his opinion, Howell's ASPD "does not . . . cause him serious difficulty in controlling sexually violent behavior." 1 VRP (Oct. 12, 2022) at 127. If Howell had serious difficulty controlling himself, Dr. Abbott would have expected to see Howell exhibiting sexually violent behavior while incarcerated analogous to that which he exhibited outside of confinement. Dr. Abbott also acknowledged that because Howell was incarcerated, he had "no access to minors or children at the special commitment center." 1 VRP (Oct. 12, 2022) at 232. Dr. Abbott characterized Howell's offenses as "not compulsive, driven, repetitive" and stated that Howell was an "opportunistic offender," which weighed in favor of his opinion that Howell did not have serious difficulty controlling his sexually violent behavior. 1 VRP (Oct. 12, 2022) at 146. Finally, Dr. Abbott testified that there was "no indication that [Howell] . . . made any kind of statements that he had difficulty controlling himself." 1 VRP (Oct. 12, 2022) at 142.

Dr. Abbot hypothesized that "if [Howell] did have [a] personality disorder that caused serious difficulty controlling sexual behavior, my opinion is . . . that he's not more probable than not to engage in . . . predatory acts of sexual violence if not treated and confined." 1 VRP (Oct. 12, 2022) at 127. Dr. Abbott based this opinion on Howell's score on the Static-99R, an actuarial instrument. Dr. Abbott initially gave Howell a "5 year risk estimate [of] 24%. So, individuals with [that] score . . . roughly 1 out of 4 of them reoffended after a 5 year period of time." 1 VRP (Oct. 12, 2022) at 171. However, because the instrument he used could overestimate Howell's risk of reoffense, Dr. Abbott adjusted Howell's five year risk estimate to "about 12 to 14%." 1 VRP (Oct. 12, 2022) at 172-73. Dr. Abbott admitted, however, that "if a sexual recidivist who has been previously arrested or convicted commits a re-offense that goes unreported then that wouldn't

6

get picked up and therefore that would be a factor that underestimates risk." 1 VRP (Oct. 12, 2022) at 185.

Ultimately, Dr. Abbott opined that "the actuarial result . . . as applied to [Howell] . . . does not support a finding of him being more probable than not to engage in predatory acts of sexual violence, if I assume he suffers from a personality disorder over which he has serious difficulty controlling sexually violent behavior." 1 VRP (Oct. 12, 2022) at 181. This opinion was based on Howell's risk estimate and a lack of "stated intention to reoffend or current evidence of serious difficulty controlling sexually violent behavior." 1 VRP (Oct. 12, 2022) at 181.

B.      JURY INSTRUCTIONS AND SVP FINDING

The State proposed a jury instruction defining "'[s]exual violence'" or "'harm of a sexually violent nature'" to include both "Child Molestation in the Second Degree" and "Rape in the Second Degree by Forcible Compulsion." CP at 186. However, the State subsequently removed the rape definition from the instruction.

The trial court instructed the jury that to establish Howell was an SVP, the State had to prove three elements beyond a reasonable doubt: (1) that Howell had been convicted of second degree child molestation; (2) that Howell had a personality disorder "which causes [him] serious difficulty in controlling his sexually violent behavior"; and (3) that Howell's personality disorder made him "likely to engage in predatory acts of sexual violence if not confined to a secure facility." 2 VRP (Oct. 17, 2022) at 516-17. The trial court also instructed the jury that "[s]exual violence" and "harm of a sexual[ly] violent nature" "means one of the following defined crimes [or an attempt to commit those crimes]: child molestation in the second degree." 2 VRP (Oct. 17, 2022) at 518. The trial court further instructed:

> A person commits . . . child molestation in the second degree when the person has sexual contact with a child who is at least 12 years old, but less than 14 years old, who is not married to the person and who is at least 36 months younger than the person.

2 VRP (Oct. 17, 2022) at 518.

The jury found Howell is an SVP. The trial court signed an "Order of Commitment" on October 17, 2022.

Howell appeals.

## ANALYSIS

On appeal, Howell does not challenge the jury's findings that he had previously been convicted of second degree child molestation and that he suffers from a personality disorder. Rather, Howell argues that because the "State did not show that [Howell] more probably than not would attempt or commit [predatory acts of second-degree child molestation], as opposed to other sexually violent offenses," there was insufficient evidence to commit him as an SVP. Br. of Appellant at 5.

A.    LEGAL PRINCIPLES

Under RCW 71.09.060(1),[4] the trier of fact "shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator." A "sexually violent predator" is "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(19). "'Likely to engage in

---

[4] RCW 71.09.060 was amended in 2023. The amendments were not substantive and do not impact our analysis; therefore, we cite to the current statute.

predatory acts of sexual violence if not confined in a secure facility' means that the person more probably than not will engage in such acts if released unconditionally from detention on the sexually violent predator petition." RCW 71.09.020(8).

> To uphold an SVP commitment, this court
>
> must find that the jur[y] . . . had sufficient evidence to find the following elements beyond a reasonable doubt:
>
> (1) That the respondent has been convicted of or charged with a crime of sexual violence; and
> (2) That the respondent suffers from a mental abnormality or personality disorder; and
> (3) That such mental abnormality or personality disorder makes the respondent likely to engage in predatory acts of sexual violence if not confined in a secure facility.

*In re Det. of Thorell*, 149 Wn.2d 724, 758-59, 72 P.3d 708 (2003), *cert. denied*, 541 U.S. 990 (2004).

Whether the "'more probable than not' standard" is met "depends on the facts underlying the SVP petition[,] expert testimony[,]" and "the statistical likelihood of reoffending." *In re Det. of Moore*, 167 Wn.2d 113, 124-25, 216 P.3d 1015 (2009). Furthermore, the third element "must be supported by proof beyond a reasonable doubt of 'serious difficulty controlling . . . behavior.'" *In re Det. of Audett*, 158 Wn.2d 712, 728, 147 P.3d 982 (2006) (alterations in original) (quoting *Thorell*, 149 Wn.2d at 745). And while

> "[A] diagnosis of a mental abnormality or personality disorder is not, in itself, sufficient evidence for a jury to find a serious lack of control," such a diagnosis "when coupled with evidence of prior sexually violent behavior and testimony from mental health experts, which links these to a serious lack of control, is sufficient for a jury to find that the person presents a serious risk of future sexual violence and therefore meets the requirement of [a sexually violent predator]."

*Id.* (alterations in original) (quoting *Thorell*, 149 Wn.2d at 761-62).

We treat sufficiency challenges to SVP proceedings the same as sufficiency challenges in the criminal context. *Thorell*, 149 Wn.2d at 744. Because "jury instructions become the law of the case," we review sufficiency challenges "in light of the instructions given" by the trial court. *Millies v. LandAmerica Transnation*, 185 Wn.2d 302, 313, 372 P.3d 111 (2016).

"In a sufficiency challenge, the evidence is viewed in the light most favorable to the State, and all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the respondent." *Audett*, 158 Wn.2d at 727 (citations omitted). Evidence of respondent's past sexual misconduct is important in "assess[ing] the mental state of the alleged SVP, the nature of his . . . sexual deviancy, and the likelihood that he . . . will commit a crime involving sexual violence in the future." *In re Det. of Turay*, 139 Wn.2d 379, 401, 986 P.2d 790 (1999), *cert. denied*, 531 U.S. 1125 (2001). "The commitment will be upheld if any rational trier of fact could have found the essential elements beyond a reasonable doubt." *Audett*, 158 Wn.2d at 727-28.

B.      SUFFICIENT EVIDENCE SUPPORTS FINDING OF LIKELIHOOD OF REOFFENSE

Howell argues that the State's evidence and expert testimony showed only that Howell was likely to commit a predatory act of sexual violence generally, not second-degree child molestation as instructed by the trial court, and thus, "[t]he evidence was insufficient for commitment under the court's instructions." Br. of Appellant at 7. We disagree.

1.      Evidence Regarding Howell's History of Sexual Misconduct with Girls Under 14

While Howell is correct that Dr. Teofilo testified that Howell was more likely than not to commit a predatory crime of sexual violence generally, as opposed to the specific crime of second degree child molestation, a rational trier of fact could have reasonably inferred that Howell was

10

likely to target and molest girls under fourteen years old based on the totality of the evidence presented at trial.

First, evidence showed that Howell had already been convicted for second degree child molestation in 1996.

Second, in a letter to the sentencing judge after the 1996 second degree child molestation conviction, Howell admitted that when he was 23 years old, he had gone out with a 12-year-old and a 13-year-old. While Howell did not elaborate on what he meant by "gone out," he made the statement in the context of responding to a child molestation charge, allowing a rational jury to reasonably infer that "go[ing] out" entailed sexual contact of some kind. Ex. 29, at 87.

Third, the evidence showed that Howell was still pursuing girls under 14 years old after being released from his 1996 conviction, as evidenced by Howell's conviction for communicating with a minor for immoral purposes. The victim in that case was also 12 years old, and while Howell did not make sexual contact with her, he appears to have attempted to, as evidenced by his watching pornography with the girl and asking her to have sex with him.

Thus, there was sufficient evidence that Howell targeted multiple girls under the age of 14, and molested at least one and potentially three of them. As our supreme court has noted, evidence of a person's past sexual misconduct is important in "assess[ing] . . . the nature of [the alleged SVP's] . . . sexual deviancy, and the likelihood that he . . . will commit a crime involving sexual violence in the future." *Turay*, 139 Wn.2d at 401.

2.      Evidence of Howell's Lack of Control

Dr. Teofilo testified at length regarding his opinion that Howell would seriously struggle to control his behavior, highlighting seven data points that supported that opinion. Many of those

data points encompassed Howell's long history of sexual misconduct, allowing the trier of fact to reasonably infer that Howell's struggle to control his behavior post-release would include struggling to control his targeting of young girls. And while Howell noted in his 1997 letter that he "[did]n't go hunting for younger girls," he worried his behavior would "get[] worse" and he would become "a h[a]bitual [p]redator," a prediction that the State's evidence at trial supported. Ex. 29, at 87. Furthermore, Dr. Teofilo's opinion that "[Howell's] future offense[s] would likely be sexually violent in nature" was based in part on Howell's child molestation conviction. 1 VRP (Oct. 13, 2023) at 404. Thus, a rational trier of fact could reasonably infer that when Dr. Teofilo opined that Howell was more likely than not to commit a predatory crime of sexual violence, included in those potential crimes was second degree child molestation.

Howell's own statements in which he worried about being able to control himself also showed his inability to control his sexual misconduct toward girls under the age of 14. In his 1996 and 1997 letters, Howell asked a judge to sentence him to the death penalty before his "problem" "g[ot] worse." Ex. 29, at 87. And while Howell never explicitly defines what his "problem" is, the context of the letter supports an inference that the "problem" was his predilection for young girls, including girls under the age of 14. Ex. 29, at 87. In those letters, Howell acknowledged his focus on young girls, including those under 14 years old, and recognized that he needed help before he became "a h[a]bitual [p]redator." Ex. 29, at 87.

Almost 27 years later, Howell wrote another set of letters to prosecutors in which he asked to be civilly committed because he was "obviously not getting things right to fit into society." Ex. 60, at 90. Again, Howell's letter does not specify what exactly he needed help with, but his history

supports a reasonable inference that he needed help controlling his inappropriate sexual behavior towards girls under the age of 14.

Thus, viewing the evidence in the light most favorable to the State, a rational trier of fact could find beyond a reasonable doubt that Howell is more likely than not to attempt or commit second degree child molestation if released from confinement. *See, e.g.*, *Moore*, 167 Wn.2d at 126 (finding sufficient evidence of likelihood of reoffending based on evidence of respondent's "repeated instances of violent sexual offenses" and expert testimony); *Thorell*, 149 Wn.2d at 759-66 (finding sufficient evidence to affirm six respondents' civil commitments where State presented some combination of evidence of respondents' difficulty controlling their behavior, history of sexually violent acts, respondents' own admissions of sexual misconduct, and expert testimony that respondent was likely to reoffend). Contrary to Howell's assertion, the jury's finding was not based on "'guess, speculation, or conjecture,'" but on the ample evidence of Howell's offenses and sexual conduct against young girls under the age of 14, as well as the reasonable inferences that could be drawn from that evidence. Br. of Appellant at 10 (quoting *State v. Colquitt*, 133 Wn. App. 789, 796, 137 P.3d 892 (2006)).

## CONCLUSION

Because the State presented sufficient evidence to support the jury's finding that Howell would more likely than not commit second degree child molestation if released from confinement, we affirm the trial court's SVP commitment order.

No. 57469-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, P.J.

We concur:

Veljacic, J.

Price, J.

14